Bureau of Support in the Department of Mental Hygiene and Correction for the State of Ohio, Appellee, *v.* Kreitzer, Trustee, et al., Appellants.

148

(No. 68-73—Decided December 31, 1968.)

*Mr. William B. Saxbe,* attorney general, and *Mr. David E. Morgan,* for appellee.

*Messrs. Withrow & Ratchford* and *Mr. Jack W. Hutton,* for appellant.

SCHNEIDER, J. The state of Ohio, through the Bureau of Support in the Department of Mental Hygiene and Correction, brought this action to compel the cotrustees under a testamentary trust to reimburse it for care and support furnished by it to the trust beneficiary, Naomi M. Swallow, an adult, mentally incompetent patient in the Dayton State Hospital. The portion of the will involved reads as follows:

". . . [I]n the event a share is established upon my death for the benefit of my daughter,. Naomi M. Swallow, the trustee shall distribute, in its *sole and absolute discretion,* so much of the income and the principal of her share as it, in its *sole and absolute discretion,* determines to be *necessary for her care, comfort, maintenance and general well-being* for and during her lifetime. Any income from her share of the trust estate not distributed by the trustee as hereinabove provided for her benefit shall be divided equally among the other shares of the trust. . . ." (Emphasis supplied.)

The trustees refused to pay the state on the ground that the fund under its control is unnecessary for Naomi's maintenance in light of the state's duty of support under Section 5121.01, Revised Code, and that the state has, in fact, discharged that claimed duty.

The Court of Appeals, two judges concurring in separate opinions, with one judge dissenting, affirmed the

judgment of the Court of Common Pleas ordering the defendant trustees to make reimbursement to the bureau from the trust funds available in their hands.

## I.
### The Right of the State to Reimbursement

Prior to the Act of 1910 (101 Ohio Laws 157) the duty of the state or one of its political subdivisions to maintain at public expense "all inmates ['patients' is the word used in the later statutes] of a benevolent institution" was absolute and extended to all, irrespective of financial condition. See *State, ex rel. Price,* v. *Huwe,* 105 Ohio St. 304, 308, and *State* v. *Kiesewetter,* 37 Ohio St. 546. Presently, however, Section 5121.01, Revised Code, is but the first part of a detailed statutory scheme, extending through Section 5121.10, Revised Code, which not only permits but clearly compels the Department of Mental Hygiene and Correction to pursue patients and liable relatives for such reimbursement for maintenance furnished as they are able to pay.

Section 5121.04 (B) (1), Revised Code, provides that "a patient without dependents shall be liable for the full per capita cost." That term is defined in Section 5121.03, Revised Code, as the rate of support. Whatever may be the nature of the liability of the state to a patient with dependents, we have no difficulty in arriving at the conclusion that in the case of one without dependents (as Naomi apparently is) the state's liability is secondary, and the primary liability for support in such case reposes upon the patient himself, or upon his estate. Ohio's duty ultimately is to provide the cost of maintenance only for the needy and distressed members of its institutional population, which parallels the duty of California. *Lackmann* v. *Dept. of Mental Hygiene,* 156 Cal. App. 2d 674, 320 P. 2d 186.

## II.
### The Rights of the Cestui Que Trust in the Trust

We turn now to Naomi's right, if any, under the trust established by the will of her father. The state claims that the will grants to Naomi an unqualified estate for care

and support. Appellants argue, on the contrary, that it gives her absolutely no claim to any distribution. We cannot agree with either contention. The trust is equivocal. It confers upon the trustees "absolute and sole discretion," but defines the standard by which that discretion is to be employed. It can, therefore, be characterized neither as a purely discretionary trust nor as a strict support trust. See 1 Restatement of the Law, Trusts, 2d 320, 323 Sections 154, 155.

Admittedly, the beneficiary of a discretionary trust for care, comfort, maintenance or well-being is endowed with no property which an ordinary creditor may reach. When, however, a fiduciary's discretion, notwithstanding it is "absolute or sole," is to be exercised with reference to needs for care and maintenance, that discretion cannot be wholly beyond a review which measures the actual need against the standard by which payments may be made. 3 Scott on Trusts (3 Ed.), 1501, Section 187, Control of Discretionary Powers; 1 Restatement of the Law, Trusts, 2d 408-409, Section 187.

By the announcement of paragraph two of the syllabus, we do not disturb the general rule that the visitorial power of a court of equity will not ordinarily be exercised to review or control the sole and absolute discretion granted to a fiduciary. See *McDonald* v. *Evatt,* 145 Ohio St. 457, 462; *Caswell* v. *Lenihan,* 163 Ohio St. 331. But necessarily we do hold, as an exception to that general rule, that the words "care, comfort, maintenance and general well-being" are to be deemed an enforceable standard of a fiduciary's conduct to the extent of providing minimal support for a destitute *cestui que trust.*

Indeed, appellants concede the validity of this proposition in their brief in the court below (which was furnished to us as a part of the printed record), wherein they state "that the trustees would undoubtedly abuse their discretion if they permitted Naomi M. Swallow to become destitute and thereafter fail to furnish her with necessary support."

Although the record is not explicit, it must be taken as conceded that Naomi is an adult without any property or means of support whatsoever and that she *would be* destitute but for the intervention of the state. Here, we reach the impasse of the case: The trustees' contention that she *cannot be* destitute so long as the state in fact maintains her, and, therefore, there is no occasion for them to exercise their discretion to determine her needs.

## III.

### The Resolution of the Impasse

By the trustees' reasoning, no one furnishing the barest necessities of life to a destitute *cestui que trust* could recover the reasonable value thereof from the trust on the theory that once the necessities are given, no state of need exists. But, see *Cooper* v. *Carter,* 145 Mo. App. 387, 129 S. W. 224 (board); *In re Mayer's Will,* 59 N. Y. Supp. 2d 561 (Surr. Ct.) (shelter and clothing); *Sherman* v. *Skuse,* 166 N. Y. 345, 59 N. E. 990 (medical services); *In re Estate of Berrien,* 147 Misc. 788, 264 N. Y. Supp. 593 (medical and hospital services).

More significantly, by appellants' logic, satisfaction of a creditor by a surety would foreclose the latter's right of subrogation against the principal debtor. The law and reason are otherwise. It is upon the discharge of the surety's duty to pay that subrogation arises.

Is it required that the state oust Naomi from its institutional care in order to establish her destitution? The question supplies its own answer—no more than it is necessary for a surety to abjure his liability. Until the surety pays, no occasion arises to claim subrogation, the principle of which, in its broadest sense, is the "substitution of one person in the place of another with reference to a lawful claim or right." *Federal Union Life Ins. Co.* v. *Deitsch,* 127 Ohio St. 505, 510.

Although our attention has not been directed to any case in which the doctrine of subrogation, a product of equitable jurisprudence, has been made applicable to a case in equity, we perceive no reason why it should not be so

applicable. See 50 Ohio Jurisprudence 2d 392, Subrogation, Section 14.

Whatever might be the position of a mere volunteer who had supplied Naomi with necessaries (but see the cases cited, *supra*), the state had at least a qualified duty to do likewise in this case. It is, therefore, no volunteer. It may have been compelled to perform. Compare *State, ex rel. Schwartz,* v. *Haines,* 172 Ohio St. 572. And, it follows from the discharge of its duty, not from a failure to discharge it, that it may be considered to stand in Naomi's place to pursue whatever right, claim or remedy she may have, including such as she may have as a destitute *cestui que trust.*

Finally, we note the recitation of the trial judge that it had been "stipulated that the services [supplied by the state] were reasonably worth the sum of $1,388.25." (The trial court ordered that amount to be paid from the trust.) Implicit in that stipulation is the agreement that Naomi was in need of institutional care and that the care so furnished was minimal with respect to that need.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, DOYLE and BROWN, JJ., concur.

DOYLE J., of the Ninth Appellate District, sitting for HERBERT, J.