123 B.R. 784 (1991)
In the Matter of June A. ABBOTT, Debtor.
Jeffrey A. TESSEL, Plaintiff,
v.
FIFTH THIRD BANK, et al., Defendants.
Bankruptcy No. 1-89-05163, Adv. No. 1-90-0091.
United States Bankruptcy Court, S.D. Ohio.
January 31, 1991.
*785 Jeffrey Tessel, Cincinnati, Ohio, pro se.
Margaret Burgin, Cincinnati, Ohio, Grace Thompson, Hamilton, Ohio, for defendants.

ORDER
J. VINCENT AUG, Jr., Bankruptcy Judge.
This case is before the Court pursuant to the Plaintiff's Complaint for a Turnover Order against defendants, Fifth Third Bank and June A. Abbott (Doc. 1); The Debtor's Answer to the Complaint for a Turnover Order (Doc. 6); Fifth-Third's Answer to the Complaint for a Turnover Order (Doc. 8) and the briefs submitted by the parties.
The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).
The issue for determination is whether the Debtor's interest in the Robert L. Matchett Trust Fund is a valid spendthrift trust under Ohio law and therefore not part of her bankruptcy estate. For the reasons stated below, Plaintiff's complaint for turnover is Denied.
The agreed facts of the case are as follows: Defendant June Annette Abbott filed a Chapter 7 Bankruptcy petition on December 11, 1989. As part of her petition, she listed an interest in the Robert L. Matchett Trust Agreement (hereafter called Trust) which was established by her stepfather, Robert L. Matchett, and which is being administered by the Fifth Third Bank Corporation.
Ms. Abbott's interest in the Trust is confined to the income from the Trust. Under the terms of the Trust Agreement, Ms. Abbott and her dependents are permitted to live in the family home which is part of the Trust corpus and Ms. Abbott is to pay the expenses associated with her occupancy of the home. In the event she does not pay these expenses, the Trust is authorized to withhold income and pay these expenses on her behalf. Ms. Abbott is living in the family home. Her son has a learning disability and has lived with her at various times because of his difficulty in obtaining and retaining employment. Other dependents have also lived with her at various times.
*786 Under the terms of the Trust Agreement, Ms. Abbott is not permitted to transfer her interest in the Trust and it is not subject to the claims of creditors.
Ms. Abbott listed her total monthly gross income, including approximately $400.00 per month from the Trust, as $2,378.00. She listed her total monthly expenses as $1,687.95. A total of $532.00 of these expenses represents home expenses.
Defendant Fifth Third Bank reports an approximate annual income from the Trust of $6,637.00. From this is deducted a trustee's fee which for 1989 was $1,727.00. However, this amount varies each year. The monthly mortgage payment to Fifth Third Bank is $307.24 for an annual payment of $3,686.88. The mortgage is scheduled to be paid in full in April, 1998. Defendant Fifth Third Bank as trustee must withhold $21.50 per year for a storm drainage fee and $385.00 per year for real estate insurance. The trustee is also obligated to withhold income for any ancillary expenses, such as repair and replacements, that are needed to maintain the value of the Trust real estate.
After Ms. Abbott filed her Chapter 7 petition, the U.S. Trustee appointed plaintiff as the bankruptcy estate trustee. He subsequently filed this complaint seeking to have Ms. Abbott's interest in the Trust Agreement turned over for distribution to creditors of the estate. Ms. Abbott filed an Answer denying that her interest was property of the estate and/or claiming that she was entitled to an exemption under Ohio Rev.Code Ann. § 2329.66(A)(11). Defendant Fifth Third Bank also filed an Answer denying that the Trust income could be reached by creditors of the bankruptcy estate.
On October 9, 1990, the Court held an evidentiary hearing on the Complaint for Turnover of Property and evidence was presented to supplement and clarify the question at issue. Ms. Abbott testified to the following additional facts relating to the use of the Trust income. For approximately the last six years, she has operated a licensed foster care facility out of her home, the corpus of the Trust. These mentally ill, elderly boarders are living in her home as tenants and at any time may need to return to a hospital. Ms. Abbott testified that she is not guaranteed the income from these patients if they do reenter a hospital. In addition to operating the group home, Ms. Abbott is employed elsewhere.
Under 11 U.S.C. § 541(a)(1), all property in which a debtor has "legal or equitable interest" at the time of bankruptcy comes into the estate. However, § 541(c)(2) allows a debtor to retain certain assets which would otherwise remain subject to the reach of his creditors. Section 541(c)(2) provides, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." (Emphasis added). 11 U.S.C. § 541(c)(2). Thus, property determined to fall within this exception will not enter the bankruptcy estate or be subject to the claims of creditors.
The words "applicable nonbankruptcy law," which are usually construed narrowly, refer to spendthrift trusts as determined by state law. In re Leimbach, 99 B.R. 796, 799 (Bankr.S.D.Ohio 1989). While there is no single recognized definition of a spendthrift trust, it generally is a trust designed to protect its beneficiaries from creditors. A spendthrift trust provides a fund for the benefit of a beneficiary other than the settlor which is secured against the beneficiary's own improvidence, and places it beyond his creditor's reach. See, Black's Law Dictionary 1256 (5th ed. 1979). An anti-alienation clause guards the beneficiary's interest against his voluntary or involuntary transfer and attachment of his interest by creditors. See, Restatement (Second) of Trusts, section 152 (1959).
Under Ohio law, a spendthrift trust is enforced as long as it is not unlawful or against public policy. See, McWilliams v. McWilliams, 2 Ohio Op.2d 77, 79, 140 N.E.2d 80, 82 (1956). However, this statement is problematic. In Ohio, it is unclear whether a spendthrift trust provision is reachable by a debtor's creditors. *787 Two Ohio Supreme Court decisions have addressed this issue coming to what appears to be different conclusions. In the case of Martin v. Martin, 54 Ohio St.2d 101, 374 N.E.2d 1384 (1978), a divorced woman's alimony claim was deemed outside the contemplation of the settlor's intent when the settlor inserted a provision in the trust for the comfort, care, support and education of his son. Id. at 103, 374 N.E.2d at 1386. The Ohio Supreme Court characterized the trust as being neither purely discretionary nor a strict support trust. This determination rested on the pertinent distribution language of the trust: "the trustee . . . shall distribute the trust's interest income or principal necessary for the beneficiary's comfort, care, support and education." Id. at 109, 374 N.E.2d at 1389. The Martin court further stated that any exception to the donor's language of the trust must be by some justifiable interpretation. Id. at 111, 374 N.E.2d at 1390. Trusts of this nature are referred to as "equivocal trusts" in Ohio. Bureau of Support v. Kreitzer, 16 Ohio St.2d 147, 243 N.E.2d 83 (1968). Equivocal trusts confer upon the trustees absolute and sole discretion while defining the standard by which that discretion can be employed. Id. at 150, 243 N.E.2d at 85. Because the beneficiary in the Martin trust did not have full legal control of the assets of the corpus until twenty-five years from the trust's inception, the anti-alienation clause was deemed valid. Martin, 54 Ohio St.2d 112, 374 N.E.2d at 1391. The court further elaborated that when the beneficiary did gain full legal rights to the corpus of the trust, the anti-alienation clause was no longer valid and creditors could attach to the beneficiary's vested interest. Id. at 112, 374 N.E.2d at 1391.
On the other hand, in Sherrow v. Brookover, 174 Ohio St. 310, 189 N.E.2d 90 (1963), the Ohio Supreme Court held a "so-called" spendthrift trust's anti-alienation clause invalid against the claims of creditors. Id. at 316, 189 N.E.2d at 94. The Court recognized that while it appeared the beneficiary had "continuing and enforceable rights . . . to obtain some direct tangible benefit," from the trust, these words could not be used to deny his creditors access to his interest as an anti-alienation provision would. Id. at 312, 189 N.E.2d at 92. The Ohio Supreme Court determined that the beneficiary, who was also the settlor of the trust, still had control over the corpus of the trust. Id. at 314-315, 189 N.E.2d at 93-94. Further, the court stated that a trust naming the settlor its beneficiary is not valid; the beneficiary's creditors present or future could reach his interest. Id. at 312, 189 N.E.2d at 92.
One court offered a reconciliation of the Martin and Sherrow differences as a "conclusion that spendthrift trusts limiting the purposes for which a beneficiary will receive distributions are enforceable against creditor attempts to execute in satisfaction of judgment under Ohio law." In re Elmore, 108 B.R. 612, 614 (Bankr.N.D.Ohio 1989). Another interpretation stated that it appeared that Ohio recognized the right of a settlor to determine how her property is used as long as this power is balanced by fairness. This fairness may be accomplished by limiting the beneficiary's right to receive the property. McCombe v. Bank One Trust Company, N.A., 93 B.R. 597, 600 (Bankr.S.D.Ohio, 1988).
In the instant case, at this time, the trust fund resembles the situation presented in Martin with a little twist; the purpose of the trust is to preserve the Debtor's home and the economic survival of the Debtor is tied to the group home operating out of the Debtor's house. This Trust fund fits the definition of an equivocal trust; the trustee is given a standard to follow while still given discretion in distribution of the trust income. This standard provides for the maintenance of the family home so that the settlor's daughter and her children may continue to live in their accustomed manner. This Court recognizes the settlor's intent was to provide for the health, maintenance and support of the beneficiary and her children. The Trust ensures a certain standard of living by providing funds to pay mortgage expenses, taxes, insurance, maintenance, repairs and other expenses connected with the ownership and occupancy *788 of the daughter's residential real estate, within the limitations of the funds.
Additionally, the settlor wished to provide the best available education for his grandson who possesses limited learning capacities. Likewise, this Court takes note of the fact that the beneficiary does not have legal control over the assets of the corpus and her use of the trust income is limited to the above-defined standard. In view of the facts of this case, the Court finds that the anti-alienation provisions of the Trust are fair and valid under Ohio law. In summary, the Court reaches this conclusion because the beneficiary, Mrs. Abbott, is not the settlor of the Trust; because she has no control over the use and distribution of the corpus assets; and because the Trust income can only be distributed for limited purposes.
Further, a review of legislative intent finds that an exclusion, under 11 U.S.C. § 541, of a beneficial interest in a trust was intended to allow the debtor a means of support for herself and her dependents. H.R.Rep. No. 595, 95th Cong., 1st Sess. 176, reprinted in 1978 U.S.Code Cong. & Admn.News. 5787, 5963, 6136. This intent is also evident in the Bankruptcy Code as the overall policy of allowing a debtor reasonable support in order to make a fresh start. The case at hand exemplifies the Congressional intent. The use of the Trust income is intimately tied to the debtor's fresh start in allowing her to pay for the house which generates a significant portion of her livelihood. Because the trust income provided a lifeline by permitting the debtor to continue to operate the group home established in her house, the trust income will aid in the reestablishment of debtor's financial stability. In view of the foregoing, this Court is compelled to find for the debtor.
Accordingly, Plaintiff's Complaint for Turnover Order is DENIED.
IT IS SO ORDERED.