Appellant William A. Schierer appeals from the judgment of the Akron Municipal Court, denying his motion for attachment to satisfy a judgment. We affirm.
On February 12, 1991, Schierer obtained a default judgment against appellee Matthew Ostafin for $400,000 in the Summit County Court of Common Pleas. The judgment stemmed from a knife attack by Ostafin on Schierer. Schierer did not seek to satisfy the judgment immediately. On November 2, 1995, Ostafin began serving a prison sentence of eight to twenty-five years on an unrelated felonious assault charge.
Apparently, at some point between 1991 and 1997, Steven Ostafin ("Settlor") died testate. Item II of Settlor's last will and testament created a trust ("the Ostafin trust"). The pertinent provisions of the trust stated:
 (1) My real property at 778 Wall Street, Akron, Ohio shall be maintained as a home for my brother, MATTHEW OSTAFIN, so long as he lives. My sister, CHARLOTTE BENNETT, shall also have the right to reside there when she shall so choose, so long as MATTHEW OSTAFIN is living. He and she shall also have the right to the unrestricted use of the furniture and household goods.
* * *
 (4) Said trustee shall pay so much of the income as she, in her discretion, deems necessary for a basic level of support for my said brother, keeping in mind any other sources of income that might be available to him. If she deems it necessary, she may invade the principal to provide a basic level of support.
* * *
 (7) Upon the death of my said sister; or, upon the death of my brother if my sister predecease him, this trust shall terminate and said trustee shall deliver the principal and any accrued interest, together with the real estate and personalty to the estate of my said brother.
The assets of the trust were several miscellaneous pieces of personalty and household furniture, a checking account, a certificate of deposit, and the house at 778 Wall Street in Akron ("the Wall Street house"). Charlotte Bennett died in February 1997.
In 1997, Schierer moved for revivor of his judgment against Ostafin, which the common pleas court granted on December 17, 1997. Schierer then sought attachment on the Ostafin trust assets in the Akron Municipal Court in March 1998. The trustee of the Ostafin trust responded on behalf of Ostafin.
A magistrate's decision was issued on July 14, 1998. The magistrate found that the Ostafin trust was a discretionary trust and therefore not subject to attachment. Schierer filed objections to the magistrate's decision. On November 9, 1998, the trial court overruled the objections to the magistrate's decision and found that the Ostafin trust was a discretionary trust not subject to attachment. This appeal followed.
Schierer asserts one assignment of error:
The assets held by the trustee are attachable. The Courterred in not issuing an attachment.
Schierer argues that the trust assets are subject to attachment because the Ostafin trust is not a discretionary trust. He further contends that paragraph one of the Ostafin trust created a life estate in Ostafin that is subject to attachment. We disagree.
A creditor cannot reach the income or principal of a trust "if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply[.]" 1 Restatement of the Law 2d, Trusts (1959) 323, Section 155(1). Likewise, the trust assets cannot be reached by the creditors of a beneficiary of a support trust which "by the terms of [the] trust * * * provide[s] that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of the beneficiary[.]" Id. at 320, Section 154. The language of the Ostafin trust directs the trustee to "pay so much of the income as [he], in [his] discretion, deems necessary for a basic level of support for" Ostafin.
Two cases from the Ohio Supreme Court deal with trust language similar to that of the Ostafin trust. In Bur. of Supportv. Kreitzer (1968), 16 Ohio St.2d 147, a mentally incompetent patient in a state hospital was named the beneficiary of a trust. The trust stated that the trustees were to distribute so much of the trust income and principal as in their absolute discretion was deemed necessary for the beneficiary's care, comfort, maintenance, and general well being. The state of Ohio, through the Bureau of Support, sought to compel the trustees of the trust to reimburse the state for the care and support of the institutionalized beneficiary. The Ohio Supreme Court held that the trust was "neither * * * a purely discretionary trust nor * * * a strict support trust." Id. at 150. Instead, the trust was termed "equivocal."Id. The court went on to hold that the trustees could be compelled to reimburse the state for the care of the beneficiary in its hospital. Id. at 151-52.
In Martin v. Martin (1978), 54 Ohio St.2d 101, the Ohio Supreme Court again visited the issue of the "equivocal" trust. The trust at issue in Martin provided that the trustees were to distribute as much of the income and principal deemed necessary in their absolute discretion for the comfort, care, support and education of the beneficiaries of the trust and the beneficiaries' issue. A spendthrift provision provided that if the trust were terminated by a creditor's demands, the income and principal would be used in the trustees' discretion for the care, comfort, support or education of the beneficiary and the beneficiary's spouse and/or issue. The ex-wife of one beneficiary attempted to extract alimony and child support from the trust.
Relying on Kreitzer, the Ohio Supreme Court held:
 A trust conferring upon the trustees power to distribute income and principal in their "absolute discretion" but which provides standards by which that discretion is to be exercised with reference to needs of the trust beneficiary for education, care, comfort or support, is neither a purely discretionary trust nor a strict support trust, and the trustees of such trust may be required to exercise their discretion to distribute income and principal for those needs.
 Id. at paragraph one of the syllabus. The court went on to hold that a judgment debtor who was seeking alimony could not reach the trust. Id. at paragraph two of the syllabus. However, because the trust did provide for the support of the beneficiary's issue, the trust could be reached to satisfy child support. Id. at 111.
In Samson v. Bertok (Dec. 19, 1986), Wood App. No. WD-86-3, unreported, 1986 Ohio App. LEXIS 9318, the Sixth District Court of Appeals addressed the breadth of the Ohio Supreme Court's holdings in Kreitzer and Martin. In Samson, the trust was what the Ohio Supreme Court called "equivocal" in Kreitzer, providing for the care, support and maintenance of the beneficiary in the discretion of the trustee. The beneficiary was sued by the plaintiffs, the owners of a house for defective construction of the house. The trial court entered judgment in favor of the plaintiffs. The plaintiffs then attempted to attach the trust assets to satisfy the judgment.
The Sixth District held that the plaintiffs' judgment could not be satisfied from the trust. The court's reasoning explored the policies underlying Kreitzer and Martin:
 Because of the Ohio Supreme Court's holdings that a trust for support can never be wholely [sic] discretionary, we note that creditors may be entitled to attach a trust under certain circumstances. See Kreitzer and Martin, supra. In equivocal trust cases such as the one at bar, where a trust for support is contemplated, regardless of the amount of discretion granted trustee [sic], the settlor's intent must be included in the analysis insofar as it may be inferred from the record.
 Trusts for support, therefore, must be interpreted in the light of the settlor's intent. The importance of the settlor's intent, with respect to the attachment of the trust proceeds, can be seen in the creditor's victories in Martin
and Kreitzer, supra, which were both based upon the nature of the debts incurred. In Kreitzer, the creditor, state of Ohio, prevailed because it had provided for the indigent appellant in a mental health facility. In Martin, a creditor prevailed only as to support for her child, fathered by appellant. (As former spouse, she was found not entitled to alimony.) In such cases, the measure of the vulnerability of an equivocal trust to creditors' attachment is whether the debt was incurred in the pursuance [sic] of "care, maintenance and support" of the beneficiary. If the trustee could be compelled to exercise his discretion in the direct support of a beneficiary, these recent Ohio Supreme Court decisions dictate the payment to a creditor who provided "care, support and maintenance" to the beneficiary.
 It therefore follows that where a debt arises out of a transaction providing for the support of a debtor who is also the beneficiary of an equivocal trust intended for his support, repayment of that obligation from proceeds of the trust is not antithetical to the intent of the settlor. In said cases, attachment may follow.
 Samson, supra, at *10 - *12. The court went on to hold that because the beneficiary's debt arose from deficiencies in the construction of a house, the trust was not subject to attachment by the plaintiffs. Id. at *12.
We find the reasoning of the Samson court persuasive and apply it here. In the case at bar, the Ostafin trust falls into the class of trusts termed equivocal by the Ohio Supreme Court. The trust provides for the trustee to exercise discretion in providing "a basic level of support" for Ostafin. However, we find that Schierer's claim did not arise out of providing Ostafin with a basic level of support. Instead, the debt arose from a tortious assault on Schierer, unrelated to Ostafin's support. As with the settlor in Samson, Settlor's intent, with regard to the Ostafin trust, was for support, not for the satisfaction of judgments arising from tortious conduct. The trial court correctly found that Schierer could not reach the assets of the Ostafin trust.
Schierer also argues that the will that created the Ostafin trust conveyed a life estate in the Wall Street residence to Ostafin. The relevant portion of the will states:
 My real property at 778 Wall Street, Akron, Ohio shall be maintained as a home for my brother, MATTHEW OSTAFIN, so long as he lives. My sister, CHARLOTTE BENNETT, shall also have the right to reside there when she shall so choose, so long as MATTHEW OSTAFIN is living. He and she shall also have the right to the unrestricted use of the furniture and household goods.
 Schierer argues that this provision created a life estate in Ostafin.
In Thomas v. United States (N.D.Ohio 1962), 207 F. Supp. 609, affirmed (C.A.6, 1963), 317 F.2d 519, a trust created by will provided that the residence was to be held by the trustee and that the decedent's wife was permitted to use the residence during her lifetime. The district court held that the language did not create a life estate but did create a right to residence in the property capable of lasting for life. Thomas, 207 F. Supp. at 612. See, also, 2 Thompson, Real Property (Thomas Ed. 1994) 514, fn. 47, Section 19.03 (collecting cases with similar holdings).
We conclude that the operative language in Settlor's will did not create a life estate in Ostafin. Rather, as in Thomas, the duty to maintain the Wall Street residence was imposed on the trustee, and Ostafin was given the right to reside in the house if he wished. Therefore, no estate capable of being attached by Schierer was created. The trial court did not err by so holding.[1]
Schierer's sole assignment of error is overruled. The judgment of the Akron Municipal Court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit Akron Municipal Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
FOR THE COURT
SLABY, P. J.
WHITMORE, J.
CONCUR
[1] Assuming arguendo that a life estate was created in Ostafin, Schierer's argument would still not be well taken. Schierer contends that such a life estate can be valued and thereafter attached. However, he cites no authority in support of this proposition, and we decline to make his argument for him.