OPINION
Appellant Samuel Buoscio appeals the decision of the Mahoning County Probate Court which denied his request for certain expenditures to be paid by the trustee to him as the beneficiary of a discretionary trust. Specifically, appellant sought the trustee to reimburse him for a health insurance policy which cost him $3,100 and to pay a $25,000 retainer to an attorney. The issue before us is whether the probate court abused its discretion by failing to hold that the trustee should have expended trust funds per appellant's request. For the following reasons, the decision of the probate court is affirmed.
 BACKGROUND
In 1984, appellant's father died with a Will that created a testamentary trust in favor of appellant. This trust, which was executed in 1977 when appellant was thirty-two years of age, provides in pertinent part:
 "(A) The TRUSTEE shall hold and administer this trust for the use and benefit of my son, SAMUEL BUOSCIO, paying to or for his benefit such part of the income and such part of the principal as my TRUSTEE deems advisable, in its absolute and uncontrolled discretion, for his maintenance, care and support, including medical, hospital and nursing home care.
 (B) In making distributions as provided for in (A) above, my TRUSTEE is directed to take into consideration the income and other personal assets which my said son, SAMUEL L. BUOSCIO, has available for his maintenance and support."
Over the course of years, the trustee, Dollar Savings Trust Co. and then National City Bank, expended income and principal for appellant. For instance, the trustee paid medical bills and car insurance at various times. In 1985, the probate court granted the trustee's application to pay $1,500 in attorney fees to Attorney Krichbaum for a criminal charge appellant was facing. The trustee also made monthly distributions to appellant. From 1985 through 1987, the trustee distributed approximately $1,200 per month to appellant. From 1988 through 1991, the trustee paid appellant approximately $1,300 per month. In 1989, the trustee gave appellant $15,000 to purchase a vehicle. In 1992, the court granted the trustee's application to pay $7,504.47 in legal fees and expenses to Attorney Seidita who represented appellant in a criminal case and performed some work in two civil cases.
One of the civil cases arose when a homicide victim's family sued appellant for wrongful death. In July 1993, appellant filed a motion in the probate court requesting $50,000 from the trustee to pay Attorney Hennenberg to represent him in the wrongful death action. The court overruled this motion that same month. In August 1993, appellant filed a motion asking for $50,000 to pay Attorney Hanni to represent him in the wrongful death action. The court overruled the motion in October 1993.
The criminal case arose after appellant was indicted in 1991 for aggravated murder with a firearm specification and having a weapon while under disability. In 1992, appellant pled guilty in the Summit County Common Pleas Court to a reduced charge of voluntary manslaughter with a firearm specification. Appellant was sentenced to ten to twenty-five years to be served after three years of actual incarceration on the specification. A few months after being sentenced, appellant filed a motion to withdraw his plea which was denied. A post-conviction relief petition was also denied.
In October 1993, appellant again asked for $50,000 in attorney fees so that he could be represented by Attorney Hennenberg. A letter from this attorney to appellant was attached which stated that appellant's only "long shot" in the criminal case was to pay him $25,000 to file motions and a $25,000 retainer to hire a criminal investigator and experts. A hearing was held on this motion, but it does not appear from the judgment or docket entries that a decision was ever rendered. Although the attorney's letter on fees was in regard to the criminal matter, appellant's motion actually sought fees for defense in the civil wrongful death suit.
After appellant was incarcerated, the trustee decreased his monthly distribution to $100 per month. The monthly distribution was increased to $200 per month in mid-1992 and remains at this rate. In 1995, appellant sought a $100 increase per month; however, the court denied this request.
In 1996, the trustee sought court guidance on whether it should pay attorney fees for appellant in a federal criminal matter. In August 1997, this request was denied as the court found that appellant was adequately represented. The court also denied a request for attorney fees to assist appellant in suing Attorney Seidita. We finally note that in April 2000, the trust was worth over $84,000.
 STATEMENT OF THE CASE
On December 13, 1999, appellant wrote a letter to the trustee asking to be reimbursed for a health insurance premium which he paid on September 10, 1990. Appellant also sought $25,000 in attorney fees. The trustee denied his request by letter, stating that "[t]he payment of attorney's fees for litigation expenses and reimbursement of an expense paid nine years ago are not covered under" the trust. On July 5, 2000, appellant filed in the probate court a "petition by beneficiary for attorney fees necessitated by unconstitutional conviction and confinement of beneficiary and reimbursement of funds spent by beneficiary for maintenance, care and support." Attached to his motion was a check dated September 10, 1990 from appellant to the Ron Ambrosia Agency for health insurance in the amount of $3,100 with a stamp showing it was paid by Metropolitan Savings Bank. Also attached was a letter from Attorney Mark DeVan to appellant stating that his retainer to represent appellant is $25,000 against an hourly rate of $250 per hour plus expenses. The letter is in reference to Case No. 98CV3010 pending in the United States District Court for the Northern District of Ohio regarding a "2255 Motion."
On August 30, 2000, the probate court denied both grounds of appellant's petition for expenditures by stating, "The Court will not substitute its discretion and judgment for that of the trustee. This Court cannot state that the trustee abused its discretion in denying the Petitioner's request." On September 27, 2000, the court filed an amended judgment entry as it had mistakenly filed the case under the wrong case number.
 TIMELINESS OF APPEAL
Notice of appeal was filed by appellant from the August 30, 2000 judgment entry. One notice of appeal was time-stamped by the probate court on October 2, 2000; one was stamped by the probate court on October 3, 2000; yet another was stamped by this court on October 6, 2000. Since the appeal appears untimely on first glance, the issue shall be considered further.
Pursuant to App.R. 4(A), notice of appeal must be filed within thirty days of the entry of judgment or, in a civil case, service of notice of judgment and its entry if service was not made on the party within the three day period in Civ.R. 58(B). Pursuant to Civ.R. 58(B), the court must endorse a direction on the judgment ordering the clerk to serve all parties notice of the judgment and the date of entry upon the journal. Then, within three days of entering the judgment, the clerk must serve the parties and note service in the appearance docket.
Although the probate court failed to instruct the clerk to serve notice of the August 30, 2000 judgment on appellant, a September 8, 2000 docket entry shows postage for mailing of the judgment entry to appellant. This entry was not made within three days of the judgment's filing. Thus, appellant had thirty days from the date of service and the entry of the service to appeal. Due to this and the fact that the judgment entry was filed under the wrong case number requiring the filing of an amended judgment entry, the within appeal was timely filed.
 ASSIGNMENT OF ERROR LAW
Appellant's sole assignment of error addresses two issues which will be addressed separately infra. This assignment provides:
 "THE COURT OF COMMON PLEAS, PROBATE DIVISION, ERRED AND ABUSED ITS DISCRETION, TO THE PREJUDICE OF APPELLANT, BY FAILING TO SUBSTITUTE ITS DISCRETION AND JUDGMENT FOR THAT OF THE TRUSTEE, IN THE FACE OF CLEAR AND COMPELLING EVIDENCE THAT SUFFICIENTLY DEMONSTRATED THAT SAID TRUSTEE HAD ABUSED ITS DISCRETION, AND COMPROMISED HIS INTEGRITY, BY FAILING APPELLANT'S REQUEST FOR ATTORNEY FEES, AND FOR REIMBURSEMENT OF OUT OF POCKET EXPENSES THAT WERE CLEARLY WITHIN MAINTENANCE, CARE, AND SUPPORT PROVISIONS OF THE LAST WILL AND TESTAMENT TO WHICH APPELLANT IS THE BENEFICIARY."
In dealing with trusts where the trustee distributes income and/or principal, the spectrum ranges from purely discretionary trusts to strict support trusts. See Bureau of Support of Mental Hygiene and Correctionv. Kreitzer (1968), 16 Ohio St.2d 147, 150. Even where a trust states that the trustee has absolute, uncontrolled or sole discretion, the trust is not purely discretionary where the language of the trust provides standards by which the discretion is to be exercised. Id. When the trustee's discretion is to be exercised with reference to needs for care and maintenance, that discretion may be reviewed by a court as an exception to the general rule that courts do not disturb the power of a trustee with absolute discretion. Id. See, also, Domo v. McCarthy
(1993), 66 Ohio St.3d 312, 316-318 (for examples of a purely discretionary trust and a trust which is not purely discretionary due to the reference to "care, comfort, support, health, maintenance, and general welfare").
Although the Kreitzer trust had a provision dealing with the beneficiary's "need", the holding was expanded in Martin v. Martin
(1978), 54 Ohio St.2d 101, where the trust's language stated, "needed or desirable for education, care, comfort or support." Id. at 107. The Court in Martin stated that debts incurred by the beneficiary for services involving education, care, comfort or support are an obligation which the trustee is required to discharge. Id. at 109.
Thus, the probate court may review the trustee's actions to determine whether the trustee should have expended funds per the beneficiary's request where the trust defines the parameters of trust expenditures in language such as maintenance, care and support as in the case at bar. When a court interprets the language of a trust, it must ascertain the intentions of the settlor. Domo, 66 Ohio St.3d at 314. When we review the probate court's decision upholding the trustee's refusal to expend funds, we do so using an abuse of discretion standard of review. See, e.g., Inthe Matter of Zmuda (Mar. 31, 1997), Lucas App. No. L-96-073, unreported, 7.
In this case, the trust instructed the trustee to use its discretion in distributing income and principal for appellant's "maintenance, care and support, including medical, hospital and nursing home care." The trustee was instructed to consider appellant's income and personal assets available for his maintenance and support. On appeal, we shall review whether the trial court and the trustee acted unreasonably, unconscionably or arbitrarily in refusing to reimburse appellant $3,100 that he paid for health insurance and in refusing to pay an attorney a $25,000 retainer to represent him in federal court on a habeas corpus petition.
 ISSUE ONE: REFUSAL TO REIMBURSE FOR HEALTH INSURANCE PREMIUM
Attached to appellant's petition for expenditures was a check paid by him to the Ron Ambrosia Agency for health insurance in the amount of $3,100. The check is dated September 10, 1990 and is stamped as being paid by Metropolitan Savings Bank. According to the trustee's response to appellant's December 1999 written request for $3,100, "reimbursement of an expense paid nine years ago [is] not covered under [the trust] provisions." Appellant claims that the trustee assured him reimbursement when he paid the premium. There is no allegation that appellant did not incur the expense. Rather, the trustee focused on the fact that appellant waited nine years to make a written request.
The trustee and the court should have supported their denial of this expenditure by citing the accounting filed in and approved by the court in 1992. This accounting establishes that on October 1, 1990, the trustee mailed a check to appellant in the amount of $3,100 as reimbursement for health insurance per a written request sent by him to the trustee on September 27, 1990. As such, appellant attempted to submit an expense in 1999 that he received reimbursement for in 1990. Therefore, appellant's argument that the trustee and the probate court abused their discretion by failing to reimburse him for health insurance is without merit.
 ISSUE TWO: REFUSAL TO PAY A $25,000 RETAINER
Attached to appellant's petition for expenditures is a letter from Attorney Mark DeVan stating that he will not represent appellant without a $25,000 retainer which will be used to pay an hourly fee of $250 plus expenses. This attorney states that this retainer would be for representation in Case No. 98CV3010 which resulted from a petition filed by appellant in the United States District Court for the Northern District of Ohio under Section 2255, Title 18 of the United States Code. This section deals with habeas petitions filed by inmates who are serving a federal sentence. From the information that we have before us, it appears that appellant was not eligible to file this motion as he was convicted and sentenced by a Summit County Common Pleas Court. Moreover, according to the clerk's office at the district court, his motion was denied on June 14, 1999.
Although the trustee previously paid attorneys' fees for appellant, these fees were to provide his actual defense prior to criminal conviction. He now seeks an attorney for collateral attack proceedings. He has previously been refused postconviction relief on his voluntary manslaughter conviction. The file contains prior requests for attorneys' fees on the civil wrongful death action. Attached to one of appellant's requests is a letter from Attorney Hennenberg opining that appellant's only "long shot" at having his guilty plea overturned is to hire a criminal investigator to find evidence that appellant is not guilty. It does not appear to be an abuse of discretion to refuse to expend $25,000, from the approximately $84,000 remaining in the trust fund, to pursue a long shot postconviction criminal investigation. The trustee may use its discretion to determine that it is in appellant's best interest to have that large sum of money preserved for his monthly distributions while incarcerated and to provide for appellant's maintenance, care and support when he is released from prison. Therefore, appellant's sole assignment of error is overruled.
As an aside, appellant notes that he cannot even establish a payment plan with an attorney because his monthly distribution is so low. However, he did not seek an increase in his monthly distribution. It appears that appellant would have a better chance if he asked for such an increase. Notably, prior to his incarceration, the trustee paid him $1,300 plus a multitude of living expenses such as a car, car insurance, home owners insurance, health insurance and prescriptions. This was at a time when employment was an option. Now, while he is incarcerated, he is receiving $200 per month which has not increased since July 1992.
For the foregoing reasons, the judgment of the probate court is hereby affirmed.
WAITE, J. and CHRISTLEY, J., concurs.