PACK, TRUSTEE, APPELLEE, *v.* OSBORN ET AL., APPELLEES; LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, APPELLANT.

[Cite as *Pack v. Osborn,* 117 Ohio St.3d 14, 2008-Ohio-90.]

(Nos. 2006–1207 and 2006–1343—Submitted April 18, 2007—Decided January 17, 2008.)

CUPP, J.

{¶ 1} In this certified-conflict case and discretionary appeal, we hold that when a trust beneficiary applies for public assistance such as Medicaid, the eligibility rules in effect at the time of the application must be applied to the applicant. Because the court of appeals held otherwise, we must reverse.

I

{¶ 2} In 1987, Maebelle Osborn established an inter vivos trust for the benefit of herself and her three children, Charlotte Osborn (who has physical and mental disabilities), Loretta Pack, and Arthur Osborn. The trust provided that upon the deaths of Maebelle and Charlotte, the trust would terminate, and the remaining principal and income would be distributed to the surviving children or their heirs. The trust named Maebelle as trustee and Loretta as successor trustee. Maebelle Osborn died in 1992. When the underlying case was filed, the trust assets were valued at approximately $265,000.

{¶ 3} According to Item 2(a) of the trust, the successor trustee is permitted to make income or principal distributions, in her sole discretion, for the benefit of Maebelle's children "only for purposes other than providing food, clothing or shelter that is to be used only to meet supplemental needs over and above those met by entitlement benefits."

{¶ 4} On May 7, 2004, Charlotte applied for Medicaid, and the trustee filed this declaratory-judgment action in the trial court, naming Licking County Department of Job and Family Services ("LCDJFS") a defendant and requesting that the trust assets be declared unavailable and not a countable resource for purposes of determining Charlotte's eligibility for government benefits such as Medicaid. Alternatively, the trustee requested that the trust be reformed to meet the current statutory and regulatory standards for trusts that are noncountable resources.[1]

---

1. As mentioned above, the same day the trustee filed the declaratory-judgment action, Charlotte applied for Medicaid with LCDJFS. The following month, LCDJFS determined that it would consider the trust assets as a reviewable and countable resource in assessing Charlotte's Medicaid eligibility. LCDJFS then declined eligibility because Charlotte's assets exceeded the $1,500 limitation. Charlotte's direct appeal of LCDJFS's administrative decision is presently stayed, pending the outcome of this case.

{¶ 5} The trial court magistrate granted summary judgment to LCDJFS, determining that the trust corpus is a countable resource that the trustee can be compelled to invade for Charlotte's medical care and maintenance. The trial court adopted the magistrate's findings, noting that the trust did not meet the present guidelines to be a noncountable resource for Medicaid-eligibility purposes. The court of appeals reversed, concluding that eligibility-review guidelines in place at the time the trust was created, rather than those in place at the time the application for benefits is filed, apply when making a Medicaid-eligibility determination.

{¶ 6} Thereafter, the appellate court certified its decision as being in conflict with four cases.[2] We determined that a conflict exists regarding whether the Medicaid-eligibility rules to be applied to an applicant who is a beneficiary of an inter vivos trust are those in effect at the time of the creation of the trust or those in effect at the time of the application. *Pack v. Osborn,* 111 Ohio St.3d 1407, 2006-Ohio-5083, 854 N.E.2d 1088. We also accepted LCDJFS's discretionary appeal and consolidated the cases. 111 Ohio St.3d 1410, 2006-Ohio-5083, 854 N.E.2d 1090.

## II

{¶ 7} In general, a "trust" is defined as " 'the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another.' " *In re Guardianship of Lombardo* (1999), 86 Ohio St.3d 600, 603, 716 N.E.2d 189, quoting *Ulmer v. Fulton* (1935), 129 Ohio St. 323, 339, 2 O.O. 326, 195 N.E. 557. The beneficiary is said to have the equitable interest in the trust, whereas the trustee has the legal interest. Restatement of the Law 2d, Trusts (1959), Section 2, comment f.

{¶ 8} When a court reviews a trust, its primary duty is to ascertain, within the bounds of the law, the intent of the settlor. *In re Trust U/W of Brooke* (1998), 82 Ohio St.3d 553, 557, 697 N.E.2d 191, citing *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706. When the instrument is unambiguous, the settlor's intent can be determined from the trust's express language. Id. The words in the trust are presumed to be used according to their common, ordinary meaning. Id. When determining the settlor's intent, an inter vivos trust "speaks

---

2. The conflict cases are *Metz v. Ohio Dept. of Human Servs.* (6th Dist.2001), 145 Ohio App.3d 304, 762 N.E.2d 1032; *Martin v. Ohio Dept. of Human Servs.* (2d Dist.1998), 130 Ohio App.3d 512, 720 N.E.2d 576; *Prior v. Ohio Dept. of Human Servs.* (10th Dist.1997), 123 Ohio App.3d 381, 704 N.E.2d 296; and *Miller v. Ohio Dept. of Human Servs.* (8th Dist.1995), 105 Ohio App.3d 539, 664 N.E.2d 619. The appeals court also noted that "three of the cases cited by LCDJFS, *Martin, Prior,* and *Miller,* hold that the law in effect on the date of the eligibility review applies, [and] the *Metz* case holds that the law in effect at the time the trust became irrevocable applies. In any event, all four cases conflict with our holding."

from the date of its creation—not the date upon which the assets are distributed." *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 156, 543 N.E.2d 1206; *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513, 518, 60 O.O. 481, 138 N.E.2d 15; 91 Ohio Jurisprudence 3d (2005) 71, Trusts, Section 42. Thus, a trust is construed according to the law in effect at the time it was created.

## III

{¶ 9} When a trust beneficiary requests public assistance, the state first determines the nature of the trust in which the applicant has an equitable interest. R.C. 5111.151; Ohio Adm.Code 5101:1–39–27.1. The nature of the trust determines whether its assets are available resources in determining whether the applicant's resources exceed the maximum limit for Medicaid eligibility. Id.; see also Ohio Adm.Code 5101:1–39.

{¶ 10} The eligibility-review rules with respect to trust interests have been frequently amended. One reason for the frequent amendments has been to close loopholes in the program so that taxpayers are not forced to accept primary responsibility for the care of persons who have access to resources that would allow them to pay for their own care. See, e.g., *Young v. Ohio Dept. of Human Servs.* (1996), 76 Ohio St.3d 547, 549 (majority opinion), 552 (Pfeifer, J., concurring), and 552–553 (Lundberg Stratton, J., dissenting), 668 N.E.2d 908. The underlying public-policy principle advanced is that "[t]he primary responsibility for the support of an individual lies with that individual." Id. at 549, 668 N.E.2d 908. As a result, the eligibility-review rules have become increasingly stringent, and the determination of which rules to apply to an applicant who is also a trust beneficiary has real significance regarding the depletion or preservation of the trust assets.

{¶ 11} As the eligibility rules have become more stringent, the General Assembly has also continued to recognize that public assistance does not, and cannot, meet all the needs of persons with disabilities, and therefore, the rules do allow assets in supplemental-services and special-needs trusts to go uncounted. See, e.g., R.C. 5111.151(F)(1) and (4); R.C. 5815.28 (formerly 1339.51); Ohio Adm.Code 5101:1–39–27.1(C)(3)(a), (d). In other words, when a trust meets specific statutory requirements, it can be used to provide financial support to a person with special needs without affecting the person's eligibility for Medicaid.

{¶ 12} Although a trust is construed according to the law in effect at the time the trust was created, *Mills*, 45 Ohio St.3d at 156, 543 N.E.2d 1206, eligibility for public assistance is determined at the time an application for such assistance is made, *Young*, 76 Ohio St.3d at 551, 668 N.E.2d 908. The rules regarding eligibility for public assistance are not forever locked into place by the establishment of a trust. See, e.g., Ohio Adm.Code 5101:1–39–27.1(D) (current "rule

supersedes all previous rules governing trusts, and the administrative agency shall apply it prospectively to all determinations and redeterminations of eligibility for all individuals"). It is a long-standing principle that no person has a vested right to the law remaining unchanged. *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 214, 527 N.E.2d 1235 (referring in general to the legislature's ability to abolish common-law rights of action); *Zanesville v. Zanesville Gas–Light Co.* (1889), 47 Ohio St. 1, 32, 23 N.E. 55 (same).

{¶ 13} And in the arena of Medicaid, the legislature is within its authority, absent some constitutional limitation, to revise eligibility rules as it balances public resources against public needs. See, e.g., 76 Ohio Report No. 226, Gongwer News Service, Inc. (Nov. 16, 2007) (Medicaid annual budget exceeds $12 billion for the 1.744 million Ohioans receiving benefits); 85 Ohio Jurisprudence 3d (2004) 90, Statutes, Section 68 ("There is no question that the General Assembly can make amendments to, or exceptions for, previously enacted legislation"). It is not difficult to foresee that if persons, through the creation of private trusts, were able to, in effect, suspend the legislature's authority to change the rules of eligibility pertaining to the beneficiaries of those trusts, it would not be long before the state would have very little control over who could receive benefits from this expensive program.

{¶ 14} For this reason, we recognize the General Assembly's authority to change the Medicaid eligibility-review rules. The recently enacted R.C. 5111.151, reflecting the legislature's adoption of portions of Ohio Adm.Code 5101:1–39–27.1, is an example of the exercise of such authority. Am.Sub.H.B. No. 85, 150 Ohio Laws, Part II, 3,065, 3,097, effective March 9, 2004. The General Assembly has established the law applicable to Medicaid-eligibility reviews of applicants who are trust beneficiaries. Therefore, in answer to the issue raised, we hold that when a trust beneficiary makes an application for participation in Medicaid, the Medicaid-eligibility-review rules in effect at the time the application is filed govern the applicant's eligibility.

## IV

{¶ 15} Notwithstanding the foregoing, the court of appeals did not determine the nature of the trust in which Charlotte has an equitable interest. Such inquiry, however, is a necessary first step in determining whether the trust assets are countable for purposes of a Medicaid-eligibility determination. Thus, we remand this matter to the court of appeals for such a determination. On remand, the appellate court should consider the following important principles.

{¶ 16} In a trust established by a settlor for the benefit of another who later applies for Medicaid, the assets are available resources only if the terms of the trust permit "the trustee to expend principal, corpus, or assets of the trust for the applicant's * * * medical care, care, comfort, maintenance, health, welfare,

general well being, or any combination of these purposes."   R.C. 5111.151(G)(2).[3] See also Ohio Adm.Code 5101:1–39–27.1(C)(4)(b).[4]   Provided the trustee has the discretion to make distributions for the above purposes, the assets in the trust remain available notwithstanding a provision in the trust that clearly prohibits a trustee from making a distribution that would affect Medicaid eligibility.   R.C. 5111.151(G)(3);  Ohio Adm.Code 5101:1–39–27.1(C)(4)(b).

{¶ 17} Trusts that give the trustee the "sole and absolute" discretion to make income and principal distributions for a beneficiary's medical care, care, comfort, maintenance, health, welfare, and general well-being are discretionary trusts, but the trustee must base his or her decisions on the needs of the beneficiary, and his or her discretion can be judged by that standard ("support standard").   Restatement of the Law 3d, Trusts (2003), Section 50.   The common-law interpretation of such trusts is that a trustee may be compelled to make distributions consistent with the trust's support terms for the benefit of the beneficiary.   *Bur. of Support in the Dept. of Mental Hygiene & Corr. v. Kreitzer* (1968), 16 Ohio St.2d 147, 45 O.O.2d 480, 243 N.E.2d 83, paragraph two of the syllabus, superseded by statute, Am.Sub.S.B. No. 124, 144 Ohio Laws, Part I, 590, 687, Section 8, effective April 16, 1993 (Section 8 of S.B. No. 124 refers to R.C. 1339.51, which was renumbered R.C. 5815.28 by 2006 Sub.H.B. No. 416, effective January 1, 2007).   See also *Martin v. Martin* (1978), 54 Ohio St.2d 101, 8 O.O.3d 106, 374 N.E.2d 1384, paragraph one of the syllabus (trustees of a discretionary trust subject to a support standard may be required to exercise their discretion to distribute income and principal in accordance with the standard);  *Metz*, 145 Ohio App.3d 304, 762 N.E.2d 1032.   The foregoing common-law principle has been codified in the statutory and administrative rules of R.C. 5111.151 and Ohio Adm.Code 5101:1–39–27.1, and causes assets in such trusts to be considered available resources of a Medicaid applicant.[5]

{¶ 18} In contrast, a trust that allows the trustee the uncontrolled discretion to distribute income and principal as the trustee determines, without a support

---

3.   At the time that Charlotte applied for Medicaid, this statutory provision had been in effect for two months.

4.   The current version of Ohio Adm.Code 5101:1–39–27.1 is not substantially different from the version in effect when Charlotte applied for Medicaid.   See 2002–2003 OMR, 1–971, effective November 7, 2002, for the earlier version.

5.   Despite the rule and the statute and the beneficiary's ability to compel the trustee to distribute funds, the assets in a discretionary trust that contains a support standard and also meets the requirements for a supplemental-services trust are not an available resource for Medicaid-eligibility purposes.   See R.C. 5815.28 (formerly R.C. 1339.51;  renumbered by 2006 Sub.H.B. No. 416, effective January 1, 2007).   When the General Assembly enacted former R.C. 1339.51, it did so with the express intent to supersede *Kreitzer*.   Am.Sub.S.B. No. 124, 144 Ohio Laws, Part I, 590, 687, Section 8, effective April 16, 1993.

standard, is a pure discretionary trust. *In re Estate of Ternansky* (9th Dist. 1957), 4 O.O.2d 329, 141 N.E.2d 189; *Morris v. Daiker* (1929), 35 Ohio App. 394, 172 N.E. 540. No court can compel a trustee of a pure discretionary trust to exercise the trustee's discretion to distribute income or principal, unless the trustee acts in bad faith, dishonestly, or with an improper motive. *Culver v. Culver* (1960), 112 Ohio App. 100, 105, 16 O.O.2d 38, 169 N.E.2d 486; *Ternansky*, 4 O.O.2d 329, 141 N.E.2d at 192–193. With the enactment of 2006 Sub.H.B. 416, effective January 1, 2007, pure discretionary trusts are now legislatively recognized and sanctioned. R.C. 5801.01(Y) ("wholly discretionary trust" defined).

{¶ 19} A significant aspect of a pure discretionary trust is that its assets are not recognized as an available resource in the Medicaid-eligibility review because a pure discretionary trust lacks a mechanism through which a beneficiary may compel a distribution. See R.C. 5111.151(G)(4)(e), (g), and (h); and Ohio Adm. Code 5101:1–39–27.1(C)(4)(c)(v), (vii), and (viii). See also *Young*, 76 Ohio St.3d at 551, 668 N.E.2d 908 (concluding that under the applicable Medicaid-eligibility rules, the fact that the discretionary trust did not include a support standard meant that the beneficiary could not compel the trustee to make a distribution, and therefore the beneficiary had no control of the resource, and it should not be counted in assessing the beneficiary's Medicaid eligibility).[6]

{¶ 20} On remand, the court of appeals will need to determine (1) the nature of Charlotte's interest in the trust, construing the trust according to the law in effect at the time it was created, and (2) whether the trust is an available resource under the Medicaid-eligibility rules in effect at the time of Charlotte's application.

## V

{¶ 21} As a final matter, the trustee herein sought a declaratory judgment. The trustee sought guidance regarding her duties with respect to the proper administration of the trust, in particular, whether she can be compelled to make distributions to Charlotte.

{¶ 22} The ability of a trustee to invoke the jurisdiction of a court is a matter that has been legislatively addressed. According to statute, a trustee may bring a declaratory-judgment action to determine any question arising in the administration of the trust. R.C. 2721.05(C) and 5802.01(C). Moreover, court involvement with respect to interpretation of a trust's terms in the Medicaid-eligibility context has been legislatively sanctioned. R.C. 5111.151(G)(4)(e), (g), and (h) (these subsections are comparable to Ohio Adm.Code subsections 5101:1–39–

---

6. The holding in *Young* is also reflected in R.C. 5111.151(G) and Ohio Adm.Code 5101:1–39–27.1.

27.1(C)(4)(c)(v), (vii), and (viii), which recognize that certain court judgments will cause trust assets to be noncountable resources).

{¶ 23} In light of the foregoing, it is difficult to accept the Attorney General's argument in his amicus brief that a trustee's request for interpretation of a trust's terms for purposes of Medicaid eligibility amounts to bypassing the Department of Job and Family Services' administrative Medicaid-eligibility review. Instead, pursuant to such request, the court interprets the trust, and its interpretation must be used in the Medicaid-eligibility-review process. It is through this procedure that the nature of the trust is ascertained—i.e., whether the trust is a pure discretionary trust or a discretionary trust with a support standard.

{¶ 24} Accordingly, the trustee's request for a declaratory judgment was a proper method by which to obtain judicial guidance regarding her duties under the trust.[7]

## VI

{¶ 25} For the reasons stated, the judgment of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

---

Browning & Meyer Co., L.P.A., and William J. Browning; and Isaac, Brant, Ledman & Teetor, L.L.P., Dennis Newman, and Mark H. Troutman, for appellee Loretta Pack.

Rachel C. Oktavec, Assistant Licking County Prosecuting Attorney, for appellant.

Marc Dann, Attorney General, Elise Porter, Acting Solicitor General, Stephen P. Carney, Deputy Solicitor, and Ara Mekhjian, Assistant Solicitor, urging reversal for amicus curiae Ohio Attorney General.

Hickman & Lowder Co., L.P.A., Janet L. Lowder, and David A. Myers; Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Richard E. Davis, and Jennifer L. Lile; and Eugene P. Whetzel, Ohio State Bar Association, urging affirmance for amici curiae Ohio State Bar Association, National Academy of Elder Law Attorneys, and Down Syndrome Association of Central Ohio.

---

7. An alternative remedy requested in the declaratory-judgment action was trust reformation. Considering the disposition of this appeal, we decline to address this issue.