**In the Matter of James J.P. QUINN, Debtor.**

**No. HL 00–05810.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 30, 2003.

Scott A. Chernich, Esq., Lansing, Michigan, for Chapter 7 Trustee.

Robert J. Kempf, Esq., Lansing, Michigan, for Debtor.

## OPINION

JEFFREY R. HUGHES, Bankruptcy Judge.

James J.P. Quinn ("Debtor") owns an interest in an annuity issued by the Teachers Insurance and Annuity Association of America ("TIAA"). He also owns an interest in the trust established in connection with the Ford Motor Savings and Stock Investment Plan for Salaried Employees ("Ford SSIP"). The issue before the court is whether Debtor's interest in either the TIAA annuity or the Ford SSIP trust is included among the Debtor's interests in property transferred to the estate created when Debtor filed his petition for relief under the Bankruptcy Code. I conclude that Debtor's interest in the TIAA annuity did become property of the estate but that Debtor's interest in the Ford SSIP trust did not become property of the estate.

### JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and L.R. 83.2(a) (W.D.Mich.). This matter is a core proceeding because it concerns the administration of the estate, 28 U.S.C. § 157(b)(2)(A), and because it affects the liquidation of the assets of the estate, 28 U.S.C. § 157(b)(2)(O). Consequently, the order entered in conjunction with this opinion is a final order subject to review by the United States District Court pursuant to 28 U.S.C. § 158(a).

### PROCEDURAL BACKGROUND

Debtor contends that his interests in the TIAA annuity and the Ford SSIP may not be administered by Trustee either because these interests do not constitute property of the estate or because they are exempt

pursuant to Section 522(d)(10)(E) of the Bankruptcy Code.[1] Trustee objected to each of these positions. As part of the pre-hearing process, I ordered that these two issues be bifurcated and that the issue concerning whether Debtor's interests in the TIAA annuity and the Ford SSIP trust constitute property of the estate be tried first.[2]

■ The parties agreed to submit this first issue to the court on stipulated facts and written argument. Therefore, the record upon which this decision is made consists of the stipulated facts and exhibits filed by the parties and their respective trial briefs.[3] Debtor bears the burden of proving that the TIAA and the Ford SSIP are excluded from the bankruptcy estate pursuant to Section 541(c)(2). *In re Barnes,* 264 B.R. 415, 420–21 (Bankr. E.D.Mich.2001) (citing *In re Fulton,* 240 B.R. 854, 862 n. 4 (Bankr.W.D.Pa.1999)); *In re Gilroy,* 235 B.R. 512, 515 (Bankr. D.Mass.1999). This opinion represents my findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052 and 9014.

## FACTS

### TIAA Annuity

Debtor was employed by Michigan State University ("MSU") from 1968 to 1979 (Stip. at ¶ 18). During this time period, Debtor participated in the TIAA/CREF retirement plan offered by the university (Stip. at ¶ 9). Debtor's participation in the

plan was mandatory (Stip. at ¶ 11). Debtor had accumulated approximately $115,066 in this plan as of the date of Debtor's bankruptcy petition (Stip. at ¶ 13). All of MSU's and Debtor's contributions to the plan were used to pay premiums for the annuity issued to Debtor by TIAA pursuant to the plan. (Stip. at ¶¶ 11 and 13). A copy of the contract evidencing the TIAA annuity is attached as Exhibit A to the Stipulation.

### Ford SSIP

Debtor's former spouse was employed by Ford Motor Company during their marriage. As part of that employment, she participated in the stock savings plan offered by the company. Debtor and his former spouse were divorced in 1992. A Qualified Domestic Relations Order was entered as part of their divorce which awarded Debtor 1,340 shares of Ford Motor Company stock from the Ford SSIP. (Stip. at ¶ 16). As of the bankruptcy petition date, the value of Debtor's interest in the Ford SSIP trust was $179,622.00. (Stip. at ¶ 17). A copy of the Ford SSIP is attached as Exhibit B to the Stipulation. (Stip at ¶ 19).

## DISCUSSION

■ Judge Spector, in *In re Barnes,* 264 B.R. 415, thoroughly evaluated whether a debtor's interest in an annuity contract issued by TIAA is excluded from the property which trustee is to administer as the appointed representative of the bankrupt-

---

1. The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1330. Unless otherwise noted, all further statutory references are to the Bankruptcy Code.

2. Debtor also disclosed interests in two other retirement plans, they being an individual retirement account ("IRA") and a 401(k) plan. Trustee has conceded that Debtor's interest in the 401(k) plan is excluded pursuant to Section 541(c)(2). Debtor, in turn, has conceded

that his interest in the IRA is property of the estate and that the only basis for avoiding administration of the IRA is his claimed exemption of that interest pursuant to Section 522(d)(10)(E).

3. The stipulated facts and exhibits are set forth in the document entitled Stipulated Facts Regarding Property of the Estate Issue. ("Stipulation" or "Stip. at ¶ ___").

cy estate. Like Debtor in the instant case, the debtor in *Barnes* argued that Section 541(c)(2) excluded from the bankruptcy estate her interest in a TIAA annuity contract because the annuity contract prohibited the assignment of Debtor's interest. Judge Spector rejected this argument. He concluded that the exclusion provided by Section 541(c)(2) was limited to interests in trusts and that no trust relationship existed between TIAA and the debtor with respect to the annuity contract.

I agree with Judge Spector's conclusion in *Barnes*. I also join with Judge Spector in his rejection of *Morter v. Farm Credit Services (In re Morter)*, 937 F.2d 354 (7th Cir.1991), *In re Montgomery*, 104 B.R. 112 (Bankr.N.D.Iowa 1989), *In re Braden*, 69 B.R. 93 (Bankr.E.D.Mich.1987), and *In re Fink*, 153 B.R. 883 (Bankr.D.Neb.1993), the four cases cited by Debtor in support of his position. I will not repeat or even summarize Judge Spector's sound analysis. However, I will offer some more insight as to why Congress included in Section 541(c)(2) the requirement that the beneficial interest be associated with a trust.

There has been a tendency among courts to interpret Section 541(c)(2) without reference to the balance of Section 541. *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Taunt v. General Retirement System of the City of Detroit (In re Wilcox)*, 233 F.3d 899 (6th Cir.2000); *U.S. v. Brooks*, 114 F.3d 106 (7th Cir.1997). However, it is not possible to read Section 541(a)(2) by itself. Section 541(c)(2) is an exception to Section 541(c)(1). Consequently, Section 541(c)(2) cannot be understood unless it is considered in the context of what Section 541(a)(1) is to accomplish in the first place. Moreover, Section 541(c) makes little sense unless it in turn is considered in conjunction with Section 541(a), for Section 541(c) supplements Section 541(a). Accordingly, consideration of Section 541(c)(2) should first begin with an examination of Section 541 generally and the purposes that section is to serve.

Section 541 performs three separate functions, each of which is crucial to the bankruptcy process. First, Section 541 creates an estate each time relief is sought under the Bankruptcy Code. "The commencement of a case under Section 301, 302, or 303 of this title creates an estate." 11 U.S.C. § 541(a). (emphasis added). The bankruptcy estate is a legal entity which is separate from the debtor. The estate serves as the vehicle through which the entire bankruptcy proceeding is then administered. When the bankruptcy trustee acts, she acts as the representative of the bankruptcy estate, not as a representative of the debtor. For example, if the bankruptcy trustee liquidates property of the estate pursuant to Section 363, she conveys title to that property on behalf of the bankruptcy estate, not on behalf of the debtor.

Second, Section 541(a) establishes that all of the debtor's assets owned as of the date of the debtor's petition are to be owned by the newly created estate.

> (a) . . . Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

Finally, Section 541 addresses the mechanics associated with creating this separate bankruptcy estate. Implicit in Section 541 is the recognition that there must be an immediate and comprehensive conveyance of all of the debtor's pre-petition interests in property from the debtor to the newly created estate. Otherwise, Sec-

tion 541's provision for a bankruptcy estate and its declaration that the debtor's property is to be included in that estate would be meaningless.

Congress enacted Section 541(c)(1) to ensure that the immediate transfer of Debtor's property to the bankruptcy estate would not be impeded by restrictions imposed by either statute or contract upon the transfer of that property:

> Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor will become property of the estate.

S.Rep. No. 95–989, at 83 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5869; *see also*, H.R.Rep. No. 95–595, at 176–77 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6325. Section 541(c)(1) itself states:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor; or
>
> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1).

The application of Section 541(c)(1) in a particular bankruptcy proceeding is for the most part transparent. For example, Michigan, like all other states, requires the transfer of real property to be evidenced by the owner's execution of a deed, MCLA § 565.1, and the transfer of an automobile to be evidenced by the owner's endorsement of the certificate of title. MCLA § 257.233(8). Section 541(c)(1) dispenses with these formalities. A debtor's interest in real property or in an automobile simply becomes property owned by the newly-created bankruptcy estate by operation of Section 541 upon the debtor's filing of her bankruptcy petition.

Section 541(c)(1) also overrides anti-assignment clauses and other transfer restrictions which would impede the transfer of the debtor's interest in property outside of the bankruptcy context. For example, a debtor's leasehold interest in property might include a provision prohibiting debtor from assigning the leasehold interest without the landlord's consent. Section 541(c)(1) indicates that such a clause is to be ignored if the debtor files a bankruptcy petition at any time during the term of the lease. Whatever interest the debtor may have in the leased property is to automatically transfer to the bankruptcy estate whether the landlord consents or not.

To summarize, Section 541 provides for the creation of a bankruptcy estate into which all of the debtor's interests in property are to be transferred. Section 541(c)(1) in turn ensures that the intended transfer is both immediate and comprehensive by overriding whatever restrictions there might be under law or agreement to impede the transfer contemplated by Section 541(a).

■ This, then, is the context within which Section 541(c)(2) must be read. Section 541(c)(2) does nothing more than carve out an exception to the broad override of transfer restrictions created by Section 541(c)(1). It states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2).

The question is why did Congress create this exception.

The answer lies in the word "trust." The legislative history indicates that the reference to "trust" in subsection (c)(2) is in fact a reference to spendthrift trusts.

> Paragraph (2) of subsection (c), however, preserves restrictions on transfer [sic] of a spendthrift trust to the extent that the restriction is enforceable under applicable bankruptcy law.

H.R.Rep. No. 95–595, 369 (1977), *see also,* S.Rep. No. 989, 83 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6325, 5787, 5869.

The Supreme Court described these excerpts from the Congressional record as "brief" and "meager." *Patterson v. Shumate,* 504 U.S. 753, 761–62, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992). However, when considered in the overall context of what Congress intended to accomplish through the enactment of Section 541, the reference in the legislative history to spendthrift trusts speaks volumes.

Courts and commentators often approach subsection (c)(2) from the perspective of whether the debtor **should** be allowed to exclude from the estate an otherwise valuable property interest. *See, e.g., Smith v. Baydush (In re Baydush),* 171 B.R. 953, 958–59 (E.D.Va. 1994) (reversing bankruptcy court's inclusion of interest in estate on theory that "excluding the contingent interest under section 541(c)(2) will give Debtor a fresh start"); *Tessel v. Fifth Third Bank (In re Abbott),* 123 B.R. 784, 788 (Bankr. S.D.Ohio 1991) (court concluding that leg-islative history indicates "that an exclusion under 11 U.S.C. § 541 of a beneficial interest in a trust was intended to allow the debtor a means of support for herself and her dependents"). Indeed, subsection (c)(2) is sometimes described as an exemption available to the debtor which is in addition to the exemptions which Congress specifically created through its separate enactment of Section 523. *See, United States v. Devall,* 704 F.2d 1513, 1518 n. 8 (11th Cir.1983). However, such an approach is distracting.

◼ There is no question that the application of Section 541(c)(2) improves the post-bankruptcy lot of any debtor fortunate enough to be the beneficiary of a trust that is subject to its provisions. However, the beneficiary's boon is nothing more than a consequence of Section 541(c)(2)'s application. Section 541(c)(2) is not about exemptions. Instead, it is about reconciling Section 541's general objective of transferring all of a debtor's property to a separate bankruptcy estate with the unique problems presented by spendthrift trusts with respect to a beneficiary's ability to assign an interest in such a trust.

A beneficial interest in a trust is fundamentally nothing more than a fancy gift. As with all gifts, the beneficiary of a trust acquires only as much as the donor intended to give. For example, if a father gives his son Blackacre, then his son takes only Blackacre. The son does not also take Whiteacre. Similarly, if the father gives his son the use of Blackacre for ten years, then his son's enjoyment of Blackacre is limited to ten years.

Spendthrift trusts reflect the logical extension of this concept. If one accepts the premise that a grantor has the absolute discretion to restrict control of a gift in any manner he or she sees fit, then it follows that the grantor may include spendthrift provisions within a trust which

prohibit a beneficiary of the trust from alienating that interest, either voluntarily or involuntarily. Courts have in fact relied upon donative intent as the rationale for justifying the enforcement of spendthrift provisions imposed upon a beneficial interest in a trust. The court in *In re Morgan's Estate*, 223 Pa. 228, 72 A. 498, 499 (1909) explained why:

> The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of *cujus est dare, ejus est disponere* [whose it is to give, his it is to dispose]. It allows the donor to condition his bounty as suits himself so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion. It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law: It has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone.

*Id.* (Latin translation added).

It is the notion that enforcement of a spendthrift provision is nothing more than the recognition of a donor's freedom to make gifts as she sees fit which necessitated the inclusion of Section 541(c)(2). As already discussed, Section 541(c)(1) overrides most types of restrictions which might impair the contemplated transfer of an interest in property from the debtor to the bankruptcy estate when a bankruptcy proceeding has been commenced. However, a beneficial interest in a trust which is subject to a spendthrift provision is arguably not subject to a restriction at all. Rather, it can be argued that the beneficial

interest given never included the power to alienate that beneficial interest. Using the metaphor adopted by Justice O'Connor in *U.S. v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 1418, 152 L.Ed.2d 437 (2002), a grantor who includes a spendthrift provision within a trust has in effect withheld from the bundle given to the beneficiary the stick the beneficiary would need in order to alienate it herself.

If the beneficiary of a spendthrift trust has no power to assign that interest, then it follows that the beneficiary has nothing to transfer to the bankruptcy estate should she at some time elect to file a bankruptcy petition. Indeed, the legislative history indicates that Congress enacted Section 541(c)(2) because it recognized the inherent inability of a debtor to override a spendthrift provision imposed by her benefactor upon a gift made to her in trust:

> The bill also continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable state law. **The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust.**

H.R.Rep. No. 95–595 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6136. (emphasis added).

The reference in Section 541(c)(2) to "applicable nonbankruptcy law" is also more understandable when considered in the context of how interests in property owned by the debtor transfer from the debtor to the bankruptcy estate. While strict enforcement of spendthrift provisions honors donative intent, such enforcement comes at a cost. Alienability is central to the notion of owning property. Consequently, the inclusion of a spendthrift provision in a trust always begs the question of whether any property interest was given to the beneficiary in the first

place. Moreover, even if a donor may restrict the beneficiary's ability to voluntarily alienate the trust interest, the question remains as to whether it is fair to the beneficiary's creditors to protect the beneficiary's interest from execution or other similar involuntary transfers. *See generally*, BOGERT, *The Law of Trusts and Trustees*, § 222 (1992).

Balancing the right to alienate property against the desire to honor donative intent has plagued both courts and legislatures as they have confronted spendthrift trusts over the years. The result of this struggle has been an ever-growing collection of statutes, rules, and exceptions which vary from state to state.

> At this date there remain differences among the laws of various states regarding the validity and permissible terms of spendthrift trusts. In a small number of states there are fairly comprehensive statutory provisions authorizing spendthrift trusts, but subject to exceptions under certain circumstances. On the other hand, in several states the courts have followed the English view in denying all validity to spendthrift provisions. In four states there appears to be no statute or case law as to the validity of spendthrift restraints. However in most states there are either statutes or court decisions, or both, which provide for the validity of spendthrift provisions, either without qualification or to a limited extent, though there has been a recent trend towards limiting the permissible scope of spendthrift restraints as they affect particular classes of claimants.

> \* \* \* \* \* \*

*Id.* at 401–402.[4]

 Section 541(c)(2) itself does nothing more than acknowledge this hodge-podge. The solution offered by Section 541(c)(2) to the question of whether a debtor's interest in a spendthrift trust is capable of transfer to the bankruptcy estate is simply to defer to whatever statute, rule, or exception would apply outside of the bankruptcy context.

To summarize, Section 541 is best characterized as an enabling statute. It creates the legal entity needed to execute the bankruptcy process. It also provides for the immediate and unfettered transfer of the debtor's property to that legal entity so that the process can begin. Section 541(c)(1) accomplishes the requisite transfer of property from the debtor to the bankruptcy estate notwithstanding any restriction which may be imposed by law or by agreement. Section 541(c)(2), in turn, is the exception to the automatic override permitted by Section 541(c)(1). However, Section 541(c)(2) is nothing more than an exception. It addresses the centuries old question of how donative intent is to be balanced with the freedom to alienate property when the interest which debtor owns is a beneficial interest in a trust subject to a spendthrift provision. Subsection (c)(2) does not attempt to answer this question. Rather, it defers to whatever law would decide the issue if it had been raised outside the context of a bankruptcy proceeding.

I find nothing within Section 541(c)(2) or the "brief" and "meager" legislative history regarding this subsection which would support the broader policy considerations which courts frequently have relied upon when called to interpret it. As best as I am able to determine, Congress gave absolutely no consideration to the policy impli-

---

4. *Bogert's* treatise sets forth in a footnote to Section 222 a survey of the law concerning the enforcement of spendthrift provisions in the various states. The footnote is 42 pages in length.

cations of subjecting retirement benefits to administration by the bankruptcy estate when it enacted subsection (c)(2). Indeed, the specific inclusion of retirement benefits among the rights and interests which debtor may exempt from the bankruptcy estate pursuant to Section 522(d) suggests that Congress intended Section 522(d)(10)(E) to be its vehicle for balancing creditors' rights against a debtor's need for a "fresh start" with respect to retirement plans. If an interest in an ERISA-qualified plan is excluded from the bankruptcy estate because of Section 541(c)(2), it is not excluded because retention of the retirement benefit is important to a debtor's financial rehabilitation. It is excluded simply because the debtor's beneficial interest in the trust created as part of that plan includes a provision which not only prohibits the debtor's transfer of that interest to the

estate but which is also enforceable under nonbankruptcy law.[5]

In the instant case, Debtor did participate in a retirement plan. However, none of the Debtor's or his employer's contributions to that plan was placed in a trust for Debtor's benefit. Rather, the contributions were used to pay premiums on an annuity issued by the Teachers Insurance and Annuity Association. It is clear from the face page of the annuity purchased from TIAA that Debtor's interest in the annuity is simply contractual. TIAA itself describes the annuity as a contract and the benefits to be provided to Debtor as being "purchased" from it. Furthermore, TIAA summarizes the obligations to Debtor under the annuity as an agreement "to pay a life annuity to the Annuitant or alternative benefits, in accordance with the provisions of this contract." (Stipulated Exhibit A at p. 1).[6]

---

5. Whether a beneficial interest in an ERISA-qualified trust creates the same tension between the grantor's right to control and the grantee's freedom to alienate as found in an inter vivos or testamentary trust which is subject to a spendthrift provision is a valid question. Prohibiting alienation on the rationale that a grantor's intent is to be zealously protected is much less persuasive when the grantor is the beneficiary's employer as opposed to a doting relative and when the trust's res represents compensation earned by the beneficiary as opposed to a gift. However, there is no question that the language used by Congress for subsection (c)(2) is sufficiently broad to include employer-created retirement trusts. While Congress may have intended to tailor the subsection (c)(2) exception to address the transfer problem posed by an interest in a spendthrift trust, Congress clearly was not that precise when it drafted the exception. Consequently, it is irrelevant whether employer-funded retirement trusts create the same conflict between donor control and freedom of alienation as do testamentary or inter vivos trusts. It is sufficient that the retirement plan in question involves a trust and the beneficial interest in question is subject to enforceable transfer restrictions.

6. In *Barnes,* Judge Spector determined that annuity contracts issued by the TIAA are not trusts but that annuity contracts issued by CREF are trusts. In his opinion, what distinguished these two types of annuity contracts was the amount of risk borne by the annuitant. The annuity promised by the TIAA contract is fixed whereas the annuity promised by the CREF contract is in part dependent upon the investment performance of the fund. Judge Spector relied upon this distinction to conclude that there was a sufficient division in ownership of the premiums paid by the annuitant to CREF to create a trust between CREF and the annuitant.

I am less inclined to rely upon this distinction. As noted in *Barnes,* the issue of whether a trust is created or not is ultimately a function of the parties' intent. Dividing the risk of loss and the ability to make investment decisions between two parties may be evidence of an intention to create a trust. However, it is not dispositive. There are any number of non-trust relationships where investment control and risk are divided. For example, investment decisions concerning a corporation's assets rest with the corporation itself although the risk of loss concerning these decisions remain with the shareholders.

Debtor's interest in his annuity with TIAA, like all other interests in contracts which he may have had at the inception of his bankruptcy, became property of the estate. The TIAA annuity certainly included anti-assignment provisions within its contractual terms. However, those provisions were overridden by Section 541(c)(1). Consequently, Debtor's interest in the TIAA annuity passed unimpeded into the bankruptcy estate created by Section 541(a) when Debtor filed his petition for relief.

■ That Debtor's interest in the TIAA annuity contract became property of the estate does not, however, mean that the Trustee gained an unfettered right to liquidate Debtor's interest in that annuity. As already discussed, Section 541(c)(1) facilitates the conveyance of a debtor's property into the newly created bankruptcy estate. However, Section 541(c)(1) does not create rights for the bankruptcy estate which the debtor himself did not have. I have previously described this concept as the "neutral transfer" principle. The principle holds that the bankruptcy estate acquires nothing more or nothing less from the debtor through the operation of Section 541(a)(1) than what the debtor had to transfer. If the bankruptcy estate is to have rights in property beyond that which the debtor had to give, then those rights

must be found elsewhere in the Bankruptcy Code. *In re Palace Quality Services Industries, Inc.*, 283 B.R. 868, 885 (Bankr. E.D.Mich.2002).

The application of the neutral transfer principle to Debtor's interest in the TIAA annuity means that the bankruptcy estate, not Debtor, is currently the beneficiary of whatever contractual rights Debtor had under the TIAA annuity as of the commencement of the bankruptcy estate. However, it also means that the bankruptcy estate is subject to the same contractual restrictions contained in that annuity, including the restriction which prohibits the assignment of the annuity to third parties. Section 541(c)(1) did not eliminate this restriction; it merely overrode it in order to accomplish the one-time transfer contemplated by Section 541(a)(1). In order for the bankruptcy estate itself to overcome the anti-assignment restrictions of the TIAA annuity, it will have to rely upon some other provision of the Bankruptcy Code. For example, if, under applicable law, creditors could attach Debtor's interest in an annuity contract notwithstanding anti-alienation provisions within that contact, then the bankruptcy trustee would have the same ability as a hypothetical creditor pursuant to Section 544(a)(1) or (2).

I am reluctant to characterize an agreement to provide an annuity of the type offered through a CREF retirement plan as a trust agreement simply because the payments which CREF has promised to pay pursuant to the annuity contract are to be based in part upon CREF's performance. I do not rule out the possibility that the managers of CREF's assets may owe fiduciary duties to the various annuitants if the funds' assets are mismanaged. However, I am not inclined to conclude that the relationship between CREF and an individual annuitant is that of trustee and beneficiary based upon the bifurcation of asset control and risk of loss alone, especially

when the relationship on its face is described as contractual.

Of course, whether the agreement between CREF and an individual to provide a variable annuity upon retirement creates a trust relationship between these parties is not an issue in the instant case. Trustee and Debtor have stipulated that "all of the monies in the TIAA/CREF account are attributable to the TIAA portion of said account" (Stip. at ¶ 13) and Judge Spector and I are in accord that the annuity contract offered by TIAA does not create a trust between TIAA and the annuitant.

In addition, Section 363(b) provides Trustee with the authority to once again override the assignment restrictions contained within the TIAA annuity. Therefore, Trustee may proceed with the disposition of the debtor's interest in the TIAA if Debtor is unsuccessful in his effort to exempt the interest pursuant to Section 522(d)(10)(E). However, the neutral transfer principle dictates that the purchaser of Debtor's interest in the TIAA annuity contract would also take that interest subject to the anti-alienation restrictions of that contract absent a showing that some other provision of the Bankruptcy Code defeated those restrictions in conjunction with the bankruptcy sale.

### Ford SSIP

Debtor's interest in the Ford SSIP is derivative. Debtor was never a Ford Motor Company employee, let alone a Ford Motor Company employee eligible to participate in the Ford SSIP. Rather, it is Debtor's former spouse who was eligible to participate in the plan and it was the contributions made by her or on her behalf which created the valuable interest which is at issue in this matter. When Debtor was married to his former spouse, Debtor's interest in the plan was limited to that of a beneficiary (Ford SSIP at ¶ 14.2). As a beneficiary, Debtor was entitled to only the residual value of his former spouse's interest in the plan if he survived her.

■ Debtor's interest in the Ford SSIP changed when he and his former spouse divorced in 1992. Under the terms of the divorce judgment, Debtor was awarded 1,340 shares of Ford Motor Company stock which his former spouse held in her account. Had the award been other than pursuant to a divorce, the award would have been unenforceable since the Ford SSIP includes the anti-alienation language required for it to be ERISA-qualified. Cf., Ford SSIP at ¶ 3.7; 26 U.S.C.

§ 401(a)(13)(A); 29 U.S.C. § 1056(d)(1). However, the parties have stipulated that the divorce judgment is a "qualified domestic relations order" as that term is used under ERISA and, therefore, the transfer contemplated by the divorce judgment was exempt from the anti-alienation provisions of the plan. 26 U.S.C. §§ 401(a)(13)(B) and 401(p); 29 U.S.C. § 1056(d)(3)(A). Consequently, Debtor's interest in the Ford SSIP changed from that of simply a beneficiary to that of an actual participant. Cf., Ford SSIP at ¶ 1.27(b).

■ It is the Debtor's interest resulting from the divorce judgment which Debtor held at the commencement of his bankruptcy proceeding. I am satisfied that this interest was held in conjunction with a trust notwithstanding Trustee's argument to the contrary. Trustee argues that there is no divergence between legal and equitable ownership of the stock associated with the Ford SSIP. (Trustee's Brief, at p. 7). Trustee is simply wrong. It is clear from the plan submitted with the stipulation that a trust was created in conjunction with the Ford SSIP and that ownership of the relevant shares of Ford Motor Company stock is divided between the plan trustee and Debtor, with the plan trustee holding the legal interest and Debtor holding the equitable interest. As Judge Spector observed in *Barnes*, whether a trust exists or not ultimately rests upon whether there was an intention to create one. 264 B.R. at 430. In the instant case, there is no question that a trust was intended to be created to administer the Ford SSIP plan. There is also no question that Debtor's interest in the shares of Ford Motor Company stock derives from that trust. Finally, there is no question that Debtor's interest in the trust is subject to restrictions on alienation which are enforceable under non-bankruptcy law.

Therefore, Debtor has met the requirements for excluding his interest in the Ford SSIP from the bankruptcy estate pursuant to Section 541(c)(2).

### *CONCLUSION*

For the reasons stated in this opinion, Debtor's interest in the TIAA annuity is included among the property interests which became property of the estate when Debtor commenced his Chapter 7 proceeding. However, Debtor's interest in the trust created in conjunction with the Ford SSIP is not.

Debtor's interest in the TIAA, as well as his interest in his individual retirement account, have been claimed as exempt and Trustee's objection to those claim exemptions must now be tried. The court will schedule a status conference to set a trial date and pretrial deadlines regarding Debtor's claimed exemption of these interests pursuant to Section 522(d)(10)(E). A separate order will enter consistent with this opinion.

### *ORDER RE: TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTIONS*

This court, having reviewed the court file, and specifically, the Trustee's objection to Debtor's exemptions, the briefs and stipulation filed in regards thereto; and this court otherwise being fully advised in the premises;

For the reasons stated in the court's opinion of even date, the Trustee's objection is SUSTAINED IN PART and DENIED IN PART.