[Cite as *In re R.H.*, 2016-Ohio-6961.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE:  R.H.

:
:
:  C.A. CASE NO. 26899
:
:  T.C. NO. 2010-4894
:
:  (Civil appeal from Common
:  Pleas Court, Juvenile Division)
:
:
:
:

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___23rd___ day of _____September_____, 2016.

. . . . . . . . . . .

BRIAN A. SOMMERS, Atty. Reg. No. 0072821, 130 W. Second Street, Suite 840, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

CHRISTOPHER B. EPLEY, Atty. Reg. No. 0070981, 100 E. Third Street, Suite 400, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of H.E. ("Mother"). Mother appeals from the October 15, 2015 "Decision and Judgment Concerning Objections to the Decision of the Magistrate" issued by the juvenile court.  The juvenile court sustained in part and overruled in part the decision of the Magistrate on Mother's

"Motion for Increase in Child Support" and the motion of J.H. ("Father") for an increase in parenting time. Specifically, the juvenile court issued a transitional order of parenting time in favor of Father, and the court also found that Mother failed to demonstrate a substantial change in circumstances sufficient to warrant a modification of child support. Finally, the juvenile court overruled Mother's request that daycare expenses for the parties' minor child, R.H., be included in the child support calculation. We hereby affirm the judgment of the juvenile court.

{¶ 2} Mother filed her child support motion on July 31, 2014, asserting therein that she "believes the current child support order does not accurately compute child support due to an increase in child care expenses and the child's expenses as well as changes in the parties' income." Father filed his "Motion for Unsupervised Parenting Time" on August 27, 2014, asserting therein that "increased parenting time is in the child's best interest."

{¶ 3} The juvenile court held a hearing on the motions on January 29, 2015. At the start of the hearing, the court indicated that it afforded the parties time to resolve the issues on their own prior to testimony. The following exchange occurred:

THE COURT: * * *

* * * As far as the child support is concerned, the Court calculated imputed minimum wage at 48 hours a week to [Father]. That got his child support to $405.10 per month, which appears to me to be double what it was. And [Father] was asking that his Saturday visitation be increased to an overnight, supervised by the * * * grandmother.

Ma'am, you understand that's what the offers were?

[MOTHER]: Yes.

THE COURT: * * * And you're rejecting that; is that correct?

[MOTHER]: Yes.

**{¶ 4}** Mother testified that R.H. is five years old. She testified that R.H. attends "pre-K" at Mini University ("M.U."). She identified a statement from M.U. and testified that she spends $398.00 a month to send R.H. there in semimonthly payments of $199.00 on the first and fifteenth of each month. Mother testified that she has been employed as a nursing assistant/ health unit coordinator at Soin Medical Center, working 36 hours a week, since September 2014. Mother identified her pay statement, and she testified that she makes $13.03 an hour. Mother identified her W-2 for 2014 and testified that she made $7,190.29 for the portion of 2014 that she was employed. She stated that she has no other income. Mother testified that she provides health care insurance for R.H. through CareSource.

**{¶ 5}** Mother testified that she resides in a home that she leases from R.H.'s grandparents. She stated that pursuant to their arrangement, she is to pay $300.00 a month "if I can afford it," and that if she cannot afford it, "then I do not have to pay rent." Mother stated that she has not yet made any rental payments. Mother stated that she pays for utilities, lawn care, and "minor maintenance things." Mother detailed her monthly expenses.

**{¶ 6}** Mother testified that Father receives substantially less parenting time than that provided by the Standard Order of Parenting Time ("standard order"). Specifically, she stated that Father exercises his parenting time for three hours every Wednesday and four hours every other Saturday. Mother stated that she sought an increase in child

support because she has additional expenses since Father is exercising limited parenting time. She stated that either Father's mother, S.B., or Father's grandmother, V.H., supervise Father's parenting time. Mother stated that there have been no problems during Father's exercise of parenting time, and that she believed supervised parenting time was in R.H.'s best interest.

**{¶ 7}** The following exchange occurred on cross-examination:

Q. Regarding your [M.U.], this is for preschool, pre-K?

A. Pre-K.

Q. * * * It's pre-K tuition?

A. It's day care and Pre-K.

Q. Well, it says, pre-K tuition. That's what the exhibit says.

A. Okay.

Q. So it's all for school; is that right?

A. Yes.

**{¶ 8}** The following exchange occurred on re-direct examination:

Q. Ma'am, you talked about an Individual Education Program for your son * * *. Can you explain why or how he was on this IEP plan?

A. It's based on social-emotional issues.

* * *

Q. And the IEP is - - is that through a public school system at the moment?

A. Yes.

Q. And which school system?

A. City of Kettering.

{¶ 9} The following exchange occurred regarding the costs of M.U. at the conclusion of Mother's testimony:

THE COURT: * * * Specifically, I want to talk about [M.U.].

THE WITNESS: Yes.

THE COURT: You're indicating that it's a pre-K program, correct?

THE WITNESS: [R.H. has] been there since he was six months. It goes up to - - yeah, I think like age ten.

THE COURT: * * * So I'm concerned that, is this a school or is this a day care facility, or is there a way to bifurcate and divide the difference between I'm paying "X" number of dollars for preschool, and then there's also day care, and I'm paying "X" number for day care? * * * Do you feel - - do you understand what I'm saying?

THE WITNESS: Yes, but they don't split it from - - it's being considered a day care.

THE COURT: * * * So it's not a preschool; it's a day care that provides him with some learning?

THE WITNESS: It's a day care that has - - what they - - what it is is a day care that has different levels of education - -

* * *

THE WITNESS: - - for each year that the child - - they move into different rooms.

THE COURT: The reason I'm asking you is, you're entitled to a

credit on your child support computation for day care, not for preschool. And if you're paying tuition for preschool, you're not entitled to that.

* * *

MR. EPLEY: Your Honor, if I may, though, you cannot get an IEP in day care.

THE COURT: That's true.

MR. EPLEY: IEP is for public education. I believe you qualify when you're three? * * *

THE COURT: Three years old, that's absolutely correct.

MR. EPLEY: When you're three, and that is education.

* * *

MR. EPLEY: That is through the federal government. That's not day care.

THE COURT: * * * Yeah, that's preschool.

* * *

{¶ 10} D. H. testified that she is a trust officer at Key Bank, and that she manages three irrevocable trusts of which Father is the beneficiary, and his mother and stepfather are grantors. The following exchange occurred:

Q. * * * Please tell me the role that you play as the trustee when it comes to disbursing either principal and/or income from the trust to [Father].

A. There - - my role in it is to submit what [Father] requests of the trustee to our fiduciary control group for review and either approval or denial. There's also a second trustee that we have to get approval from.

There's a co-trustee.

* * *

Q.   Now, you pay legal obligations owed by [Father]; is that correct?

A.   We are paying right now the child support.

* * *

Q. * * * Is that a monthly expense that [Father] submits to you to be paid?

A.   He - - yes.

* * *

Q.   So you would agree with me that you would pay for some, quote, unquote, living expenses?

A.   The terms of the trust allow us to make distributions for health, maintenance, support, and education, so it would have to - - any distribution would have to fall within those parameters.

* * *

Q.   In support of [Father's] support, education, maintenance, and health, how much has the trust paid out total in 2014?

* * *

A.   Was little over $73,000.

* * *

Q.   Now, does that - - part of that $73,000, does that also include the child support obligation that you paid for 2014?

A.   It does.

* * *

THE COURT: * * * Of the $73,000 that was paid out by the trust in calendar year 2014, how much of that has been issued on either a W-2 or a 1099 to [Father]? That will show me what the income is.

THE WITNESS: * * * it would come out in a K-1 from the trust.

* * *

THE WITNESS: And those, of course, haven't been issued yet for 2014.

* * *

THE WITNESS: But the trust income is right around probably $3,500 a month - -

THE COURT: That's income of the trust; that's not income to this gentleman.

THE WITNESS: Right.

THE COURT: How much is income to this gentleman, do you know?

THE WITNESS: I would say around $3,500 a year.

THE COURT: 3,500 a year is income to him?

THE WITNESS: Uhm-hmn, yes.

* * *

BY MR. SOMMERS:

Q. And you mentioned something, how much the trust generates per month in income?

A.   Annually the trust generates, depending on what the market value is, between 3,500 and 4,000.

Q.   Per month?

A.   Per year.

THE COURT:   Thank you.   That cleared it up for me.

Q.   Let me ask - - and you said this is a discretionary trust, correct?

A.   Yes.

Q.   Is there a provision in the trust that releases the obligation of the discretionary where [Father] would gain control over the principal amount?

A.   There is a termination date on the trust.

* * *

A.   And that is when [Father] turns 50.

Q.   And what happens when [Father] turns 50?

A.   Then the trust terminates, and if there is any balance in it, it will be paid out to him.

{¶ 11}  On February 20, 2015, "Mother's Closing Argument" was filed.   She asserted therein that the magistrate "should include $73,000 as Father's gross income into the calculation for the child support obligation" and "classify the income from Father's trust as potential cash flow under the definition of gross income."   Mother relied upon *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533 (2d Dist.). Mother asserted that if "the court does not find that the father's trust funds should be calculated as gross income, then it would be proper to find him voluntarily unemployed and impute the minimum wage of $15,080 on him."   Mother asserted that R.H. is with

her "the majority amount of time, and the burden of the cost to care for the child is on Mother. Thus, deviation upward of the child support calculation is proper because of the lack of time Father spends with the child."

{¶ 12} On March 11, 2015, Father filed a "Brief in Support." Father asserted that he has no control over the trust or the distributions therefrom. He asserted that "Mother stated that she had nothing to show the Court reflecting daycare costs. * * * Tuition reimbursement is not part of the Child Support Calculation Worksheet and is therefore not a change in circumstances that would require a modification of child support." According to Father, while Mother asserted that income should be imputed to him pursuant to the factors listed in R.C. 3119.01, "Father, however, did not testify and there was no evidence introduced regarding his unemployment/underemployment or the statutory factors." Father asserted that "Mother has minimal living expenses because Father's family owns the house she lives in and she does not pay rent." Father asserted that "Mother's attempt to have [F]ather pay for IEP tuition is misguided (Mother's Motion alleged that the child had an increase in child care expenses)." Father asserted that "Mother did not elicit any evidence that Father had control over the Trust or that Father's Trust is earning more than $4,000 per year in income (Mother alleged that there was a change in the parties['] income)."

{¶ 13} Regarding a deviation in parenting time, Father noted that although Mother testified that there were no problems with Father's visits with R.H., she "refused" to increase Father's parenting time. Father asserted that "because there was no evidence presented indicating an increase in parenting time is detrimental to the child," he requested additional time with his son without a deviation in child support. Father

asserted that he requested additional parenting time "based on the best interest of the child."

{¶ 14} In his March 25, 2015 decision, the Magistrate determined as follows:

Based on the evidence presented and taking into consideration the credibility and demeanor of the witnesses as well as the factors in Revised Code 3109.051(D) the Court finds that it is in the best interest of the child to grant parenting time to the father * * * pursuant to this Court's Standard Order of Parenting Time supervised by [S.B.] or if [S.B.] is unavailable, then supervised by [Ro.H.]  The father shall not consume alcohol or drugs of abuse during or immediately prior to his parenting time.  The father or a fully licensed driver known to the child shall provide all transportation for said parenting time.  The first weekend under the Standard Order of Parenting Time shall be April 3, 2015. * * *

Based on the evidence presented and taking into consideration the credibility and demeanor of the witnesses the Court further finds that there is not a substantial change in circumstances to require a modification of the child support amount.  The Obligor is the beneficiary of a managed trust where sole discretion for expenditures is left to the trustee. [D.H.], one of the co-trustees, testified that the Obligor's income from the trust for 2014 was approximately $4,000.00.  No testimony was introduced to prove that the Obligor was incapable of working a full time minimum wage job.  The Court therefore imputes a minimum wage income to the Obligor.

The Obligee's contention that the child support should be increased

because the Obligor has less parenting time with the child than this Court's Standard Order of Parenting Time is without merit. The Obligor's parenting time is reduced at the Obligee's request. Revised Code 3119.23 does not afford the Court the ability to increase a child support obligation due to the noncustodial parent having less than the Standard Order of Parenting Time.

The Obligee is not entitled to child care expenses. Plaintiff's Exhibit #1, a statement from [M.U.,] details monthly tuition payments for pre-K. The child is on an IEP which is mandated for special needs children in preschool. If [M.U.] is also providing daycare services, the Obligee has failed to prove the specific costs for daycare. She therefore is not entitled to have any daycare expenses considered in calculating child support. Accordingly, the motion to increase child support is overruled.

{¶ 15} Mother filed her objections on March 31, 2015. Mother requested findings of fact and conclusions of law, and she objected to "the Magistrate's Finding granting Defendant Standard Order of Parenting Time supervised and the child support." On April 7, 2015, the Magistrate ordered Mother to submit proposed findings of fact and conclusions of law within 10 days. On April 8, 2015, Father responded to Mother's objections, asserting that the Magistrate's decision "was well-reasoned and supported by the evidence presented at trial."

{¶ 16} In "Mother's/Defendant's Proposed Findings of Fact and Conclusions of Law," Mother asserted as follows:

Mother contends that the Magistrate's finding of fact that Father received supervised standard order of parenting and calculation of child

support goes against the manifest weight of the evidence and misconstrues the law. Further, the Magistrate failed to cite to any applicable law despite the parties submitting closing argument briefs. Thus, the reviewing court cannot assess the lower Court's application of the law. No testimony or evidence whatsoever was presented at the final hearing * * * to support Father being granted supervised standard order parenting time. Further, the Magistrate failed to credit of (sic) Mother paying daycare/pre-school during her employment.

{¶ 17} Citing R.C. 3109.04(F)(1), Mother asserted that the Magistrate should have found that she "clearly testified that she believed that Father was a danger to the child's safety" based upon his "continued substance abuse." She stated that she "testified that Father was inconsistent with his parenting time and his inconsistency had [a] negative impact on the child." Mother asserted that she testified that R.H. is well adjusted to her home but that he exhibits behavioral issues when he returns from Father's care. Unlike Father, Mother asserted that she "has no history of mental or physical problems." According to Mother, she "has facilitated all of Father's parenting time and Father did not file a motion to show cause." Mother asserted that "father's trust makes all payments as he is unemployed. Further, the trust provided approximately $75,000 per year in support for Father." Mother asserted that the "Magistrate should have found that Father's parenting time under the previous [order] was in the child's best interest."

{¶ 18} Regarding Father's trust, Mother asserted that "the intent of the statutory definition of income is to be both broad and flexible, again, to insure the calculation of child support will be in the children's best interest." Mother asserted that the "definition

of income specifically includes the revenue from an obligor's trust." Mother asserted that the "beneficiary of a discretionary trust is entitled to the funds for care, comfort, support, or well-being. * * * Reasonable support would include any normal expected and legal responsibilities. This would include sufficient funds to support both beneficiary parent and their children. The application of that rule does not change if the beneficiary parent" and the child live apart from one another. Mother asserted that Father should not be allowed to avoid his child support obligation "with funds that could be enjoyed at a later date." Mother asserted that since Father's trust has been paying his child support obligation, it "would only seem equitable that the income from this trust be considered as gross income, and calculated into Father's child support obligation to be used for the benefit of the child."

{¶ 19} Regarding daycare costs, Mother asserted that the Magistrate failed to consider applicable law, and that a "trial court does not have to include all of the claimed daycare expenses under R.C. 3119.022; rather, the trial court has discretion to determine what amount of daycare expenses is *appropriately* included in the worksheet." Mother asserted that she cannot care for the child while she works and "the child is not even school age and cannot be left alone when Mother is at [w]ork." Mother asserted that she "sufficiently met her burden of proving that the daycare expenses were both reasonable and necessary. Thus, the Court will include $398 per month in daycare expenses." Finally, Mother asserted that "Father should have been ordered to pay child support pursuant to attached child support worksheet."

{¶ 20} On April 23, 2015, the "Magistrate's Findings of Fact and Conclusions of Law" were filed. Regarding parenting time, the Magistrate found in part that there have

been no problems with parenting time, that Father is "an admitted alcoholic," that Mother is healthy, and that the parties have difficulty working together regarding parenting time. The Magistrate concluded as follows: "It is in the best interest of the child to have parenting time with [Father], pursuant to this Court's Standard Order of Parenting Time supervised by either [S.B.] or [Ro.H.]. It is further in the child's best interest for Father not to consume alcohol or drugs of abuse during or immediately prior to his parenting time. ORC 3109.051(D)(1-16)."

{¶ 21} Regarding child support, the Magistrate found in part that Father "is the beneficiary of a managed trust where the sole discretion for expenditures is left to the Trustee," and that the trustee "issued a form K-1 to [Father] which evidences income for 2014 in the amount of $4000." The Magistrate found that Father "is capable of working a full time, state minimum wage job," and that his "income from the trust is less than state minimum wage so $16484 is imputed to him as income." The Magistrate found that Mother "pays tuition for the child to attend preschool at [M.U.]," and that the child "has an IEP which is federally mandated for special needs children in preschool." According to the Magistrate, Mother "presented evidence of the cost of tuition for [M.U.] but presented no evidence as to the cost of daycare." Finally, the Magistrate found that Mother "earns $23714 from employment," and that Father's "child support obligation is $206.70 per month." Finally, the Magistrate concluded that pursuant to R.C. 3119.79, "there is not a 10% change in the Obligor's child support obligation, therefore, there is no change in circumstances substantial enough to require a modification or increase of the child support amount."

{¶ 22} On June 18, 2015, Mother supplemented her objections, again asserting

that Father "should not be awarded standard order parenting time." Mother asserted that the Magistrate "failed to consider the income Father receives from his trust as gross income," and that "Father is living the lifestyle of a person with an income of $73,000 per year. The Magistrate's decision forces the minor child to live the lifestyle of [a] minimum wage earning parent." Finally, Mother asserted that since "Father is unable to care for the child during the day, daycare is both a necessary and reasonable cost to be included in the child support calculation." Father responded to Mother's supplemental objections on July 2, 2015, again asserting that it is in R.H.'s best interest to have parenting time with Father pursuant to the standard order, that the Magistrate correctly found that there was no change in circumstance warranting a modification in child support, and that the Magistrate correctly found that Mother failed to produce evidence of daycare costs.

{¶ 23} In rendering its October 15, 2015 decision, the juvenile court initially noted that paternity "has been established for the child by an Acknowledgment of Paternity Affidavit, filed with the Central Paternity Registry on January 20, 2010." Regarding parenting time, the court reviewed the factors set forth in R.C. 3109.051(D) and determined it to be in R.H.'s best interest to grant Father "Phase-In Parenting Time before transitioning into the Standard Order of Parenting Time." The court delineated guidelines and three four-week periods of supervised parenting time to commence on October 21, 2015, with additional hours awarded at the successful conclusion of each period, concluding with overnight visitation from Saturday night to Sunday. At the successful conclusion of the three periods, the court ordered that Father's parenting time be consistent with the standard order. The court's award of parenting time is not a subject of Mother's appeal.

{¶ 24} Regarding child support and daycare expenses, the court determined as follows:

Pursuant to O.R.C. § 3119.79, when a party to a current child support order requests a modification of the amount of support required to be paid, the Court shall recalculate the child support obligation, through the line establishing the actual annual obligation, pursuant to O.R.C. § 3119.02. If the recalculated amount is "more than ten per cent greater or more than ten percent less than" the current amount, then the "deviation . . . shall be considered by the court as a change of circumstances substantial enough to require a modification of the child support amount." *O.R.C. § 3119.79.* The Court notes the parent requesting the modification has the burden of showing a change of circumstances has occurred. * * *.

[Mother] maintains that the distributions [Father] receives from trusts should be included in calculating his gross income. [D.H.] is a trust officer at Key Bank in Dayton, Ohio. * * * [D.H.] manages three trusts in which [Father] is the beneficiary. * * *The trusts are irrevocable trusts. * * * In her role as trust manager, [D.H.] submits requests from [Father] to a fiduciary control group that either approves or denies the request. In addition to [D.H.] and the fiduciary control board, a co-trustee, [B.L.], must also approve the request. * * * In 2014, the trusts paid out approximately $73,000 for [Father's] health, maintenance, and education, including the current child support obligation. * * * [D.H.] testified that the trust generates about $3500-$4,000 in income annually. * * *

In support of her position that the $73,000 in trust disbursements should be included in the child support calculations, [Mother] directs the court to *Howell v. Howell*, 167 Ohio App.3d 431, in which Ohio's Second District Court of Appeals found that gross income included potential cash flow so that a parent could not avoid support obligations by "shifting present income to a cash flow expected to be enjoyed at some future time." * * * However, the present case differs quite significantly from *Howell*. In *Howell* the trust beneficiary had unrestricted access to the trust proceeds. In the present case, [Father] does not have free access to the trust proceeds. [D.H.] testified that [Father] makes requests of the trustees that may or may not be approved. To warrant modification of a child support order a substantial change of circumstances must be shown. The Court finds that [Mother] failed to show a substantial change of circumstances sufficient to warrant a modification of child support. [Mother's] objection in regard to trust distributions is **OVERRULED.**

Finally, [Mother] argues that daycare expenses should have been included in the child support calculations. O.R.C. 3119.022 does not require the trial court to include all of the claimed daycare expenses; rather the court has the discretion to determine what amount of daycare expenses is appropriately included on the worksheet in determining child support. * * *

[Mother] testified that the child is enrolled at [M.U.] and she pays both tuition and daycare expenses. * * * The child is on an IEP through Kettering

City Schools. Exhibit #1 is a statement from [M.U.] in regards to pre-K tuition. [Mother] testified that the statement was for school tuition. * * * IEP's are for public education, and not available in daycare establishments. [Mother] was unable to provide the Court with the costs of daycare alone. [Mother's] objection in regard to daycare expenses is **OVERRULED.**

{¶ 25} Mother asserts two assignments of error herein. Her first assigned error is as follows:

THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION IN FAILING TO CONSIDER APPELLEE'S TRUST DISTRIBUTIONS AS GROSS INCOME IN CHILD SUPPORT.

{¶ 26} Mother asserts that the definition of income in R.C. 3119.01(C)(7) includes trust income, and that the "very fact that the trustee with whom the discretion to distribute funds from the trust lies has already established a pattern of paying child support directly from the trust is sufficient evidence for the Trial Court to consider funds from the trust as income for child support purposes; failure to do so is an abuse of discretion." Mother relies upon *Matthews v. Matthews*, 5 Ohio App.3d 140, 450 N.E.2d 278 (10th Dist.1982), and she asserts that "[l]ike the reasoning in *Matthews*, [Father] should not be allowed to benefit from his trust income while his child gets minimum support. Thus, it should be only proper to impute an income of $73,000, plus [Father's] earnings capacity over and above his trust income, for child support calculation purposes." According to Mother, "any underemployment or unemployment of [Father] is solely due to his own lack of ambition, which should not result in deprivation of the parties' child['s] support and maintenance." Mother asserts that the "only attribute that is impacting [Father's] earning

capacity is his personal refusal to be employed and [properly] support his child in the same manner that he is accustom[ed] through the benevolence of his parents." Mother argues that income should be imputed to Father "at no less than an annual wage of $73,000.00, plus the minimum wage of $16,000.00, for a total annual income of $89,000.00 for child support purposes." Mother asserts that where "the trial court erred was not considering that the $73,000 per year of expenses distributed by the trust for the sole benefit of [Father], constitutes gross income for child support purposes, but rather holding that his only income is $4000, derived solely from the K-1 issued by the trustee."

{¶ 27} Father responds that the "issue in [*Matthews*] was whether income from a trust may be attached for purposes of paying a judgment against a beneficiary for child support. * * * The *Matthews* decision did not address whether the trust distributions could be consider[ed] 'gross income' for purposes of a child support calculation." Father asserts that the beneficiary in *Matthews* "had a child support judgment against him in a defined amount and the Court determined that plaintiffs could attach that judgment to defendant's interest in a trust."

{¶ 28} Father argues that "[i]napposite to *Howell*, Father has no control over the trust or its distributions. Father cannot shift 'present income to a cash flow expected to be enjoyed at some future time' because the Trust does not give him that authority. Further, Father does not have a judgment against him to which *Matthews* would apply." Father asserts that trust "distributions are not trust income. Additionally, because [Father] does not have access to the trust corpus the trial court appropriately found there was no substantial change in circumstances. There is no error in that finding." Finally, Father asserts that even "though the Magistrate correctly concluded that father's income

is $4,000, the Decision is likewise correct in imputing income of $16,484 for purposes of [the] child support calculation. * * * Those amounts, however, do not show the requisite change in circumstances delineated in R.C. 3119.79."

**{¶ 29}** " 'A trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion.' *Snyder v. Snyder*, Cuyahoga App. No. 95421, 2011-Ohio-1372, ¶ 42, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108, 1997-Ohio-105 * * *." *L.B. v. T.B.*, 2d Dist. Montgomery No. 24441, 2011-Ohio-3418, ¶ 5. As this Court has previously noted:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. V. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990).

*Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

**{¶ 30}** As this Court further noted in *L.B.*:

When a trial court makes or modifies an order for child support, the court is required to comply with Chapters 3119, 3121, 3123, and 3125 of the Ohio Revised Code. R.C. 3109.05(A)(3). Any modification of a child support order requires a two-step process. *Coffman v. Coffman* (June 28, 1995), Greene App. No. 94–CA–104, citing *Brockmeier v. Brockmeier* (1993), 91 Ohio App.3d 689, 692, 633 N.E.2d 584; *Cheek v. Cheek* (1982), 2 Ohio App.3d 86, 87, 440 N.E.2d 831. The court must first determine

whether there has been a change in circumstances. *Id.*, citing *Brockmeier*, supra; *Cheek*, supra; *Cole v. Cole* (1990), 70 Ohio App.3d 188, 590 N.E.2d 862. Pursuant to R.C. 3119.79, when either party requests a modification of a child support order based upon a change in income, the court must recalculate the amount of support using the statutory guidelines, schedules, and worksheets. *Id.* See, also, *Snyder v. Snyder*, Cuyahoga App. No. 95421, 2011-Ohio-1372, ¶ 43. "A recalculated amount that varies more than ten percent from the existing amount 'shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.' " *Id.*, quoting R.C. 3119.79(A). If there has been a change in circumstances, the court may modify the support order in accordance with the statutory factors and guidelines. *Id.*, citing *Cole*, supra.

*Id.*, ¶ 11.

{¶ 31} R.C. 3119.01(C)(7) defines gross income in part as " * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes * * * trust income; * * * and potential cash flow from any source." As this Court has previously noted, "[t]he statutory definition of income is very broad and includes income from trusts, as well as potential cash flow from any source. This is consistent with R.C. 3103.03(A), which requires a biological or adoptive parent of minor children to support the children 'out of the parent's property or by the parent's labor. ' " *Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533 (2d Dist.), at ¶ 50.

{¶ 32} In *Howell*, Kathy Howell asserted on appeal that the trial court " 'erred as a

matter of law by failing to include as income for child support [James] Howell's substantial inheritance.' "   *Id.*, ¶ 3.   This Court noted as follows:

> In deciding the income to be considered for child support, the court refused to impute income to James in connection with a trust that his grandfather had established.   The corpus in the trust was about 1.4 million dollars, and James and his brother had a contingent interest in the trust dependent on the death of their father at some point in the future.   During the marriage, James had received significant distributions from the trust, and Kathy had asked the court to impute an additional $12,000 in income per year, based on approximately $204,000 in distributions that had been made between 1981 and 1998.

> The trial court refused to impute additional income based on past receipts, because there was no evidence that James had legal control over any money he might receive. * * *.

*Id.*, ¶ 12-13.

{¶ 33}  By way of background, James initially appealed from the parties' divorce decree, raising five assignments of error which this Court rejected.   *Howell v. Howell*, 2d Dist. Clark No. 2002 CA 60, 2003-Ohio-4842, ¶ 7-32.   Kathy later filed a post decree motion for attorney fees associated with James' appeal.

> * * * In the motion, Kathy stated that she did not have funds to complete the appeal.   She also noted that James had now become a vested beneficiary in his grandfather's $1,000,000 trust, because James' father had died.   On the same day, Kathy filed a motion to increase spousal

support due to changed circumstances. Specifically, Kathy claimed that James was no longer the recipient of discretionary funds. Instead, under the terms of the trust, the trust now had to be terminated, with 50 percent of the corpus being paid to James.

*Howell*, 167 Ohio App.3d 431, *supra*, at ¶ 17.

{¶ 34} Kathy subsequently sought an increase in child support, and James sought to have his child support decreased. *Id.*, ¶ 18, 20.

The magistrate * * * noted that * * * James had become a vested beneficiary of his grandfather's trust, due to the death of both his parents. James was able to access trust proceeds by calling the attorney managing the trust. In May or June 2004, James withdrew $500,000 from the trust and used the proceeds to purchase land in Maine ($160,000 to $170,000), and a Four Winns boat ($270,000). * * *

* * *

*Id.*, ¶ 25.

{¶ 35} The *Howell* decision reflects the following additional facts:

* * * According to documents that had previously been admitted, James was entitled to half of $335,000 in a trust that his father had established, and he could take a distribution of that money at any time. James was also entitled to half of his mother's estate, or about $328,000. James indicated that if he had chosen to invest these amounts in addition to the $500,000 minimum from his grandfather's trust, he could have earned $50,000 per year in investment income on a conservative rate of return for

the combination of all three inheritances. * * *

*Id.*, ¶ 30.

{¶ **36**} In its decision, in relevant part, the Magistrate increased child support to $687.95 a month. *Id.,* ¶ 32. The parties filed objections, which were overruled. *Id.*, ¶ 33. On appeal, Kathy's above assigned error was "based on the trial court's failure to include James' substantial inheritances as income for child-support purposes." *Id.*, ¶ 46. This Court noted that "Kathy clearly stressed that *potential interest income* should be included as gross income under R.C. 3119.01(C)(7)," and that the "trial court did not address this issue when it overruled Kathy's objections." *Id.* (Emphasis added). This Court noted as follows:

> R.C. 3119.01(C)(5) defines income in two ways. For individuals employed to full capacity, income means "the gross income of the parent." R.C. 3119.01(C)(5)(a). If an individual is fully employed, the definition of "gross income" in R.C. 3119.01(C)(7) applies. For persons who are unemployed or underemployed, income means the parent's gross income plus any potential income. R.C. 3119.01(C)(5)(b). In the latter situation, R.C. 3119.01(C)(11) provides the methods of imputing potential income to the individual who is underemployed.

*Id.*, ¶ 48.

{¶ **37**} This Court noted that since the Magistrate "did not find James to be underemployed, his income would be governed by the definition of 'gross income' in R.C. 3119.01(C)(7)." *Id.*, ¶ 49. This Court noted as follows:

> In *Bishop v. Bishop,* Scioto App. No. 03CA2908, 2004-Ohio-4643,

the trial court included potential rental income from a property in gross income, even though the property was not currently being rented, nor was it in a condition to be rented. Id. at ¶ 17. See, also, *Murray v. Murray* (1999), 128 Ohio App.3d 662, 668, 716 N.E.2d 288 (unexercised stock options are potential cash flow and should be included in gross income); and *Sizemore v. Sizemore* (Oct. 14, 1994), Montgomery App. No. 13673, 1994 WL 558917, *3 (non-income producing asset may be considered potential cash flow and is properly included in gross income of fully employed obligor). As we pointed out in *Sizemore*, "[n]o finding of voluntary unemployment or underemployment is required to find the existence of potential cash flow." Id. We also stressed:

"[O]ne of the purposes of the 'potential cash flow' provision in R.C. 3113.215(A)(2) * * * [is] to prevent a parent from avoiding child support obligations by shifting present income to a cash flow expected to be enjoyed at some future time, when the children have become emancipated." Id.

*Howell*, ¶ 51-52.

{¶ 38} It was significant to this Court in *Howell* that "James chose to transfer money to items that could produce cash flow at a future point. For example, James testified that he spent $160,000 to $170,000 of the trust proceeds on land in Maine as an investment." *Id.*, ¶ 53. This Court determined that James' "choice to shift present income to a later point, perhaps in an attempt to avoid child-support obligations, should not be rewarded. James testified that he could have earned $50,000 per year on the funds that he inherited but chose not to do so." *Id.* The court remanded the matter "so

that the trial court may take the amount of potential investment income from the three inheritances into account in calculating James' 'gross income' for child-support purposes." *Id.*, ¶ 55.

{¶ 39} *Matthews* involved an action brought by an ex-wife against her ex-husband, who was the beneficiary of a trust, to recover alimony and child support. The facts therein are as follows:

In 1975, defendant Matthews' former wife, plaintiff Janice Matthews, filed an action against defendant for alimony and support. The trial court awarded her only child support in the sum of $42.50 per week. Defendant Ohio National Bank of Columbus, trustee of the trust, has paid that weekly amount to plaintiff from the income of the trust.

Plaintiff Matthews, her daughter, Glenna Sue Matthews, and Glen Davis, who apparently contributed to the support of Glenna Sue Matthews, then filed suit against defendant Matthews for damages for his desertion and his failure to support his child. Defendant Matthews failed to appear, and a default judgment in the total amount of $94,698.70 was entered in favor of plaintiffs. The court awarded Janice Matthews and Glen Davis $54,698.70 for defendant's failure to support his daughter. The balance was awarded to Janice Matthews and Glenna Sue Matthews as compensatory and punitive damages for defendant's desertion.

Defendant Matthews has not paid the judgment. Plaintiffs filed the action in this case to collect the judgment from defendant Matthews' interest in the trust. The trial court rendered judgment in favor of defendants, relying

on the case of *Martin v. Martin* (1978), 54 Ohio St.2d 101, 374 N.E.2d 1384 [8 O.O.3d 106], for its holding that neither the income nor the corpus of the trust was available to pay the obligation of a beneficiary for child support where the beneficiary has only an interest in the income of the trust. The trial court further held there was nothing in the trust instrument indicating an intent by the settlor to provide for defendant's children. The trial court also held that plaintiffs could attach only defendant Matthews' vested interest in the trust, but that no such vested interest existed because the trust was fully discretionary.

*Matthews*, 140-41.

**{¶ 40}** On appeal, Janice asserted in part that the trial court erred in determining that her judgment could not be satisfied from William's interest in the trust. *Id.*, 141. The Tenth District determined that the "initial question in this case is whether the child of the beneficiary of a discretionary or spendthrift trust may attach the interest of the beneficiary for the child's support." *Id.* The court noted that "Defendants rely on *Martin* * * * for their argument that defendant Matthews' child may not attach defendant Matthews' interest in a trust." *Id.* The Tenth District determined as follows:

The trial court found that the beneficiary had only an income interest in the trust and that the principal therefore could not be reached.

The trial court erred in concluding that the trust was fully discretionary. The first branch of the syllabus in *Martin* reads as follows:

"A trust conferring upon the trustees power to distribute income and principal in their 'absolute discretion,' but which provides standards by

which that discretion is to be exercised with reference to needs of the trust beneficiary for education, care, comfort or support, is neither a purely discretionary trust nor a strict support trust, and the trustees of such trust may be required to exercise their discretion to distribute income and principal for those needs." (Citing *Bureau of Support v. Kreitzer* [1968], 16 Ohio St.2d 147, 243 N.E.2d 83 [45 O.O.2d 480].)

In this regard, the Ohio rule follows the general rule. 76 American Jurisprudence 2d 402, Trusts, Section 164. The trust before us, as the trust in *Martin*, is neither a purely discretionary trust, nor a strict support trust. It follows that, at least to the extent of his needs, defendant Matthews has an interest in all of the income of the trust.

The next question is whether plaintiffs may claim an interest in the beneficiary's income interest in the trust. We find no decision of the Supreme Court that disposes of the issue. A review of the cases from other jurisdictions that have considered the question of whether the interest of the beneficiary of a discretionary or support trust may be attached for child support causes us to conclude that there is no unanimous view of the law. At least one Ohio court has held that the interest is not attachable. *McWilliams v. McWilliams* (Franklin C.P.1956), [2 O.O.2d 77] Ohio Misc., 140 N.E.2d 80; see, contra, *Payer v. Orgill* (Cuyahoga C.P.1963), Ohio Misc., 191 N.E.2d 373. However, the majority rule is that the child may, in the absence of an express exclusion in the trust instrument, recover from the trust. 1 Restatement of Trusts 2d 328, Section 157; 76 American

Jurisprudence 2d 413-415, Trusts, Section 178; 91 A.L.R.2d 262, 266. The reasoning upon which this position is based is that the beneficiary should not be allowed to enjoy his interest while neglecting to support his children. We believe this to be the better rule.

The trial court held that there was no indication that the settlor intended to provide for defendant Matthews' children. However, the trust document states that the trustee shall pay what he deems necessary for the beneficiary's "reasonable support, maintenance and health." Support of one's children is mandated by R.C. 3103.03. "Reasonable support" includes payment of all of the beneficiary's normal, expected and legal responsibilities. It would have been unreasonable, had defendant Matthews lived with his child, for the trustee to have refused to pay defendant Matthews sufficient funds from the trust to support both himself and his child. We have been given no reason why "reasonable support" should have any different application simply because defendant lived apart from his daughter.

As plaintiffs argue, the settlor knew that his son had not held a job and, therefore, apparently intended to provide for payment of all his son's normal expenses, which would include care of his children. Furthermore, the trustee has determined that it is within its discretion to pay present and future child support, refusing only to pay the arrearage. It is inconsistent for the trustee to maintain that it would not be in its discretion to pay child support for the earlier period where such payment does not place in

jeopardy the beneficiaries' interest in the trust. We thus hold that plaintiffs do have a valid claim against the interest of defendant Matthews in the trust for the support of the child of defendant Matthews.

* * *

The final question is, from what fund the judgment should be satisfied. Plaintiffs claim that Item III(c) of the final codicil to the will of Corwin Matthews authorizes payment from the corpus of the trust. That section states that, when the income from the trust is insufficient to provide for the beneficiary's needs, the trustee may pay such additional monies as are necessary from the principal of the trust.

The total value of the trust is approximately $500,000. The total amount of the judgment against defendant Matthews for child support is $54,698.70. The trustee testified that the trust fund has annual income of approximately $35,000. From this income are paid the maintenance of defendant, the present child support payments, and certain other specified payments. The annual payments from income have been approximately $22,000. The remainder of the income each year is apparently added to the corpus of the trust. The income for the present year will not produce sufficient surplus to satisfy the total judgment for child support. However, plaintiffs may recover that amount of the surplus income for the year which is not required for the other obligations of the trust. Plaintiffs may recover such amount as is available in each succeeding year until the judgment is satisfied. Assuming no significant change in the trust income, the judgment

for child support could reasonably be expected to be paid from the trust income within three to five years. It would, therefore, be imprudent to order the trustee to invade the principal to satisfy said judgment. This amount constitutes over one-tenth of the entire principal, and the payment of such an amount could jeopardize the trust itself. Therefore, we hold that the trustee did not abuse its discretion by refusing to invade the corpus of the trust to pay the judgment.

We hold that income from a trust which is neither a purely discretionary nor a strict support trust and which contains no express exclusion therefrom of the beneficiary's children may be attached for the purpose of paying a judgment against the beneficiary for child support.

*Id.*, 141-43.  The Tenth District remanded the matter.

**{¶ 41}** We agree with the juvenile court that Mother failed to demonstrate a change in circumstances necessary to warrant an increase in child support.   We conclude that *Howell,* as the juvenile court noted, is distinct from the matter herein.   D.H. testified that (unlike the beneficiary in *Howell*), Father submits requests for disbursements that are reviewed by a fiduciary control group and either approved or denied.   While the trust disbursed $73,000.00 in 2014, which included Father's child support obligation, the trust itself earned annual income of around $3,500.00 - $4,000.00, as would be reflected in a Schedule K-1.   There is no indication that Father transferred money to items that could produce cash flow at a future point, as in *Howell.*   Further, Kathy Howell specifically sought *potential interest income* from James.   Father's trust disbursements are discretionary funds and not potential cash flow under the definition of gross income. Here,

since the trust income of $3,500.00 to $4,000.00 is less than the state minimum wage income, the trial court properly imputed minimum wage income to Father.

{¶ 42} We further agree with Father that Mother's reliance upon *Matthews* is misplaced. While we agree with the Tenth District's assertion that a trust beneficiary should not be allowed to enjoy his interest while neglecting to support his children, we further agree with Father's argument that the holding in *Matthews* is limited to an attachment for the purpose of paying a judgment against the beneficiary for child support, and that the Tenth District did not determine whether trust distributions could be considered "gross income" for purposes of a child support calculation.  We note that while the trust in *Matthews* was fully vested, D.H. testified that Father's trust will not vest until he turns 50.  We further note that in *Matthews*, the trust had income of $35,000.00 and made annual disbursements of $22,000.00, and that the judgment against Matthews was to be paid from the surplus income after the obligations of the trust were satisfied. In other words, the Tenth District did not remand the matter based upon the disbursements Matthews received from the trust, but rather on the trust's surplus income.

{¶ 43} Finally, we note that the initial child support calculation worksheet, dated June 7, 2010, reflects an actual child support obligation of $2,480.43, with a monthly payment of $206.70; the current worksheet completed by the Magistrate reflects an actual child support obligation of $2,714.47, with a monthly payment of $226.12.   Since Mother failed to demonstrate a change of circumstances necessary to warrant a modification of child support pursuant to R.C. 3119.79, an abuse of discretion is not demonstrated, and her first assigned error is overruled.

{¶ 44} Mother's second assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO ADD DAYCARE COSTS INTO THE CHILD SUPPORT COMPUTATION.

**{¶ 45}** As this Court has previously noted:

Line 19 of the Child Support Worksheet set forth in R.C. 3119.022 addresses the "[a]nnual child care expenses for children who are the subject of this order that are work-, employment training-, or education-related, as approved by the court or agency (deduct tax credit from annual cost, whether or not claimed)." A percentage of the approved annual child care expenses are added into the obligor's annual child support obligation on line 21 (when health insurance is provided) or line 24 (when health insurance is not provided). R.C. 3119.022. "R.C. 3199.022 (line 19) requires an adjustment only when child care expenses a party claims are 'approved by the court.' " *Daufel v. Daufel*, Montgomery App. No. 22584, 2008-Ohio-3868, ¶ 38.

*Johnson v. McConnell*, 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, ¶ 16. The phrase " 'as approved by the court * * *' contemplates four determinations the court or agency must make: (1) that one of the parents incurs child care expenses, and, if so; (2) the annual amount of expenses incurred; (3) that the expense is work, employment training-, or education-related; and, (4) that the expense is reasonable in relation to the need for child care." *Johnson*, ¶ 37 (Grady, J., concurring).

**{¶ 46}** "R.C. 3119.022 does not require the trial court to include all of the claimed daycare expenses; rather, the court has the discretion to determine what amount of daycare expenses is appropriately included on the worksheet in determining child

support." *Johnson*, ¶ 23. At the hearing, Mother submitted evidence indicating that she is paying "tuition" for R.H. to attend M.U. She further testified that R.H. has an Individual Education Plan at M.U. through the Kettering Public School System. We agree with Father that Mother presented no evidence that she incurs day care expenses. Accordingly, the trial court did not abuse its discretion in failing to adjust Father's child support obligation based upon Mother's tuition payments to M.U. Mother's second assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring in part and dissenting in part:

{¶ 47} I concur with the majority opinion insofar as it concludes that the trial court did not err in failing to include daycare expenses in the child support calculation. However, I would find that the trial court did err in concluding that there was no change in circumstances and in not revisiting the issue of child support on that basis.

{¶ 48} Pursuant to R.C. 3119.79(A), a change of circumstances shall be found if the "amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order."

{¶ 49} Under the previous child support order, dating back to 2010, Father was paying $206.70 per month, or $2,480.40 per year. Father's imputed income at that time was $14,976, and Mother's income was $24,336. In 2015, in concluding that there was no change in circumstances, the trial court used in its calculations Father's imputed income of $16,484 and Mother's income of $23,714.60. Using these numbers, Father's

child support obligation would have been $226.12 per month ($2,713.44 per year), a difference of only $19.42 per month from the earlier calculation. Therefore, the trial court concluded that the change in circumstance was less than 10%, and thus insufficient to warrant a modification. ($19.42 / $206.70 = .0939, or 9.39%).

{¶ 50} However, both the trust income and the imputed income should have been included in Father's income for purposes of the child support calculations. They represent Father's earned and unearned income, and R.C. 3119.01(C)(7)'s definition of gross income requires that both types of income be included; R.C. 3119.01(C)(7) also specifically includes trust income in the definition of "gross income." Further, R.C. 3119.01(C)(5) defines income, "[f]or a parent who is unemployed or underemployed," as "the sum of the gross income and any potential income of the parent." Under this definition, Father's current gross income (the trust income) should be added to his potential (or imputed) income. In other words, under the circumstances presented here, the trust income and the imputed income for purposes of employment should have been totaled in determining the Father's (an unemployed parent's) income.

{¶ 51} Using the low end of the Trustee's estimate, Father's gross income via the trust was $3,500; his imputed or potential income as determined by the trial court was $16,484. Thus, Father's income under R.C. 3119.01(C)(5) and (7) was the sum of these numbers, or $19,984. If this number, rather than $16,484, had been used as Father's total gross income on the child support calculation worksheet, and all other factors remained the same, Father's child support obligation would have been $260.88 per month. The difference between Father's previous child support obligation of $206.70 per month and $260.88 per month is

more than 10%, and thus constituted a change of circumstances. ($260.88 - $206.70 = $54.18; $54.18 / $206.70 = .262, or a 26.2 % deviation from the prior obligation).

**{¶ 52}** Having found a change of circumstances, the trial court might then have held a hearing or otherwise gathered more evidence about Father's trusts, their assets, their history of distributions to Father, and the likelihood that there would be income or distributions from the trusts in future years. Based on that information, the court would have been permitted not only to recalculate child support (based on the parties' current incomes), but also to review the appropriateness of that calculation. In so doing, it could determine whether any deviation from the standard order was warranted by Father's past and reasonably anticipated future income and distributions and, if appropriate, enter a child support award which comprehensively reflects the parties' true financial positions and which provides an equitable assessment of both parties' means of supporting the child.

. . . . . . . . . .

Copies mailed to:

Brian A. Sommers
Christopher B. Epley
Hon. Anthony Capizzi